IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAROLD McWHORTER, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case Number: 2:15-CV-01831-MHH |
| ) | |
| OCWEN LOAN SERVICING LLC., ET AL., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO OCWEN'S MOTION TO DISMISS**

Plaintiff's Harold McWhorter and Robert Fielder bring claims against Defendant Ocwen Loan Servicing, LLC ("Ocwen") on behalf of themselves and a class of similarly situated Ocwen customers. Ocwen's attempt to dismiss these claims lacks merit. Plaintiffs have standing to bring this case in this Court, and the Third Amended Complaint states a claim because Ocwen retained a portion of the unlawful convenience fee. Ocwen has not cited a single case to support its position that the fee is lawful even where the debt collector retains a portion of it.

**I.      This Court has proper subject matter jurisdiction**

The Third Amended Complaint alleges that subject matter jurisdiction exists under 28 U.S.C. § 1331 and § 1332(d). (Doc. 50 at ¶ 22 and 23). Ocwen has raised no issue that would contradict the allegations validly asserted and sworn to by counsel under Fed. R. Civ. P. 11. Instead, Ocwen cites out of court statements it elicited from represented parties to insinuate that Plaintiff's counsel violated Rule 11. Ocwen's assertion that Plaintiffs' counsel does not represent Mr. McWhorter and Mr. Fielder is incorrect. Plaintiffs' counsel has represented both Mr. McWhorter and Mr. Fielder at all relevant times, and can confirm this fact by offering the Court an in camera review of the Attorney/Client Agreements if the Court requires.

1

Ocwen's own transcripts of \ conversations with Mr. McWhorter and Mr. Fielder demonstrate that the plaintiffs' statements that they were not represented are the product of unsophisticated plaintiffs' misunderstanding of the law, and frankly, of the way Ocwen's representatives treated the Plaintiffs. For example, Ocwen's representative asked Mr. Fielder the following question: "[y]our loan, your mortgage used to be represented by an attorney and I'm just getting the information to see if that's still up-to-date." Plaintiffs' counsel represents Mr. Fielder, not his mortgage.

The motivation for Mr. Fielder's response to inquiries of representation is clear from the following exchange: "Kayla: So your attorney, we're only supposed to communicate with them? Fielder: Uh, no, no, no. I haven't communicated with no attorney, no." It is common in cases involving unsophisticated consumers for such consumers to feel concerned about telling a creditor that they are represented by an attorney for fear of retaliation. It is clear from the transcripts that Ocwen would have refused to speak to Mr. Fielder about his concerns if he had not stated that he was unrepresented. Similarly, Plaintiff McWhorter was asked "[a]lright it looks like the account was being represented by an attorney. Is that still correct?" He responded by stating, "Uh, attorney, no. Not right now." Again, Plaintiffs' Counsel represents Mr. McWhorter, not his account. In any case, Mr. McWhorter was calling to find out the status of his account after making a payment, and, as evidenced by the transcript with Mr. Fielder, Ocwen would have refused to provide him with the status if he admitted to being represented.

The facts asserting the Court's subject matter jurisdiction in the Third Amended Complaint remain true, and this Court has no reason to dismiss on this ground.

## II. Ocwen is a debt collector under the FDCPA with regard to both the named plaintiffs

### A. Ocwen regularly collects debts owed to others, and Ocwen does not contend otherwise.

Ocwen does not, because it cannot, contend that it is not a debt collector within the meaning of the FDCPA. Plaintiffs allege, and Ocwen does not dispute, that Ocwen "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a (6). The recent Eleventh Circuit decision in <u>Davidson v. Capital One Bank (USA), N.A.</u>, makes it clear that such an allegation satisfies the FDCPA's "debt collector" element. 797 F.3d 1309, 1316 (11th Cir. 2015). Ocwen does not argue otherwise.

B.     **Ocwen is a debt collector with respect to Robert Fielder.**

Ocwen does not dispute that it acquired the mortgage loan of Plaintiff Robert Fielder when it was in default. Rather, it claims that it is not subject to the FDCPA based on the bankruptcy that Mr. Fielder filed after Ocwen obtained the loan. Despite the discharge of debts in this bankruptcy, Ocwen still holds the mortgage on Mr. Fielder's home, obligating Mr. Fielder to continue to make payments on pain of foreclosure. Mr. Fielder continues to pay the same amount he did before, and Ocwen continues to allow him to live there.

Ocwen does not cite a single case in which a Court held that the FDCPA did not apply solely because a debt had been discharged in bankruptcy. Rather, Ocwen's basic argument is that it is not a debt collector because it seeks to enforce a security interest. However, it also continues to collect money from Mr. Fielder. The Eleventh Circuit has clearly held that an entity that is both collecting a debt and enforcing a security interest qualifies as a debt collector under the FDCPA. <u>Reese v. Ellis, Painter, Ratterree & Adams,</u> 678 F.3d 1211, 1218-19 (11th Cir. 2012).

> The Rule the <u>Ellis</u> law firm asks us to adopt would exempt from the provisions of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt. That rule would create a loophole in the FDCPA. A big one. In every case involving a secured debt, the proposed rule would allow the party demanding payment on the underlying debt to dodge the dictates of § 1692e by giving notice of foreclosure on the secured interest. The practical result would be that the Act would apply only to efforts to collect

3

>unsecured debts. So long as a debt was secured, a lender (or its law firm) could harass or mislead a debtor without violating the FDCPA. That can't be right. It isn't. A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.

Id. at 1217-18. In other words, the simple fact that Ocwen holds an enforceable security interest, even if it were attempting to enforce that interest, does not preclude application of the FDCPA. What the Eleventh Circuit requires to apply the statute, at least in reference to § 1692e, is some sort of debt collection activity to go along with the security interest enforcement. Id.[1] Although Reese constitutes controlling authority in this case, Plaintiff also notes that the other cases cited by Ocwen are all distinguishable from the present facts.

In this case, it is unclear whether Ocwen has taken any steps to enforce its security interest at all. Rather, it has agreed not to enforce that interest so long as Mr. Fielder continues to pay the mortgage. The letter at issue in Reese came from a debt collector because it demanded the payment of money to prevent foreclosure. Id. at 1214. Clearly Ocwen's conduct here is likewise that of a debt collector. According to Ocwen's own affidavit, it sends Mr. Fielder a notice each month "which details the amounts **due under the mortgage to prevent initiation of in rem foreclosure proceedings** . . . ." Aff. of Howard Handville at P. 19 (Doc. 59) (emphasis added). Because Ocwen is clearly trying to collect the debt due under the mortgage, it cannot evade the FDCPA simply because it also has a security interest.

---

[1] None of Ocwen's cited cases involve the actual collection of payments from the consumer. See e.g., Acosta v. Campbell, 2006 WL 3804829 (M.D. Fla. Dec 22, 2006), aff'd 309 F. App'x 315 (11th Cir. 2009) (holding that the act of filing foreclosure proceedings did not constitute debt collection activity); Gray v. Four Oak Court Ass'n, 580 F. Supp. 2d 883 (D. Minn. 2008) (same); Chomilo v. Shapiro Nordmeyer & Zielke, LLP, 2007 WL 2695795 (D. Minn. Sept. 12, 2007) (same); Rosado v. Taylor, 324 F. Supp. 2d 917 (N.D. Ind. 2004) (most security enforcement activities fall outside scope of FDCPA, but not section 1692f(6)); Arruda v. Sears, Roebuck & Co., 310 F.3d 13 (1st Cir 2002) (actions taken to repossess household items not subject to FDCPA); Sullivan v. Ocwen Loan Serv., LLC, 2009 WL 2140075 (D. Colo. July 14, 2009) (debt discharged before acquisition by Ocwen (not after as in this case) was not in default when obtained.)

Ocwen next relies on Johnson v. Ocwen Loan Servicing for the proposition that a "consumer lacks Article III and statutory standing under the FDCPA unless she was obligated on the underlying note at the time the suit is brought." (Doc. 58 at 9) (citing 374 Fed. App'x 868 (11th Cir. 2010). Yet Johnson does not support this sweeping proposition. Instead, Johnson held that a stranger to an existing mortgage who held nothing but a quitclaim deed lacked any injury from Ocwen's attempt to either collect money she did not owe or foreclose on a house she did not live in. Id. at 873-74.

In Washington v. American Home Loans, the defendant attempted to argue that the plaintiff lacked standing, citing Johnson. 2011 WL 11651320 at *2 (C.D. Cal. Nov. 12, 2011). The court rejected this argument, explaining why Ms. Washington (and Mr. Fielder) have standing to pursue FDCPA claims:

> Defendants challenge Plaintiff's standing generally because she did not sign the promissory note. Defendants cite Johnson v. Ocwen Loan Servicing, 374 Fed. Appx. 868 (11th Cir. 2010), which held that a plaintiff lacked standing because she "was not a borrower *or otherwise obligated on the loan*, and, therefore did not suffer an injury-in-fact." Id. at 873 . . . Here, however, Plaintiff *was* otherwise obligated on the loan . . . Plaintiff stands to lose the equitable interest that she has in the subject property . . . .

Id. (emphasis original to Washington opinion). Like the Plaintiff in Washington, and unlike the one in Johnson, Robert Fielder lives under constant threat of suffering the injury-in-fact of losing the equity in his home. Ocwen can foreclose on the property if he gets too far behind. The only thing that changed with the discharge of his personal debt in bankruptcy is that Ocwen can no longer go after him personally for any deficiency that might exist after foreclosure. Furthermore, Mr. Fielder has suffered injury-in-fact by paying illegal SpeedPay fees. He has proper standing to sue under the FDCPA.

The violation alleged by the Third Amended Complaint does not concern a communication under § 1692e that may or may not be connected to debt collection activity. The violation, under § 1692f, lies in the very manner that the money is collected; it is intrinsic to the debt collection activity. Ocwen cannot logically argue that it is "enforcing" a security interest by collecting a debt instead of enforcing its security interest. Under Reese, the Eleventh Circuit has made it abundantly clear that a security interest holder collecting a debt is a debt collector. 678 F.3d at 1217-18. Ocwen is a debt collector with respect to Robert Fielder.

### B. Ocwen is a debt collector with respect to Harold McWhorter.

Ocwen does not appear to dispute that, under the original contract, Mr. McWhorter was in default when Ocwen acquired the loan. However, Ocwen argues that Mr. McWhorter's payment of three payments under the trial period of a Home Affordable Modification Plan ("HAMP") brought his account current before Ocwen acquired the loan. This argument represents a misunderstanding of both the treasury guidelines and the meaning of default under the FDCPA.

The HAMP guidelines do state that "[s]uccessful completion means that the borrower is current (under the MBA delinquency calculation) at the end of the Trial Period." United States Treasury Department, http://www.treasury.gov/press-center/press-releases/Documents/modification _program_guidelines.pdf (last accessed Aug. 21, 2015). This definition is necessary in the HAMP guidelines because those guidelines state that the borrower must be "current" at the end of the trial period to receive a permanent modification. The treasury guidelines make no mention that the loan should be considered current for any other purpose.

Courts faced with the question of defining default have generally deferred to the definition existing in the contract between the parties. See e.g., Hartman v. Meridian Fin. Servs., 191 F. Supp. 2d 1031, 1043 (W.D. Wisc.) (finding that a loan acquired at eleven days late was in default,

6

because the contract stated that the buyer is in default "if he fails to pay on time"). The Second Circuit opined that "[t]he interests of debtors, creditors, collectors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default" in the underlying contracts. Alibrandi v. Fin. Outsourcing Servs., Inc., 333 F.3d 82, 87 (2nd Cir. 2003). Ocwen cites to nothing in any statute or in the Treasury Department's guidelines or regulations that suggests Congress intended to overturn this basic reading of the FDCPA and substitute a different meaning of default through the HAMP program. In fact, nothing related to the HAMP program even mentions the FDCPA.

The contract at issue here was attached to Ocwen's motion. It provides that "Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment . . . ." (Doc. 59-5 at 9). The contract does not provide for a method of curing default. Plaintiff believes that he was significantly behind before entering the trial modification period. Thus, he believes that the three on-time payments he made over three months could not possibly have caught him up. Plaintiff believes that this allegation is sufficient to survive Ocwen's 12(b)(6) motion, but, if the Court is unsatisfied, requests discovery of Plaintiff's full payment history.

### III. Speed Pay convenience fees violate the FDCPA because Western Union remits a portion of the fee to Ocwen.

Ocwen admits that it charges fees of $12.00 to $19.50 for using the SpeedPay system to pay by telephone. Aff. of Howard Hanville at P. 21 (Doc. 59). Plaintiff alleges that these fees are shared between Ocwen and Western Union. Ocwen does not and cannot argue that these fees are authorized by the contracts at issue. Therefore, these fees violate the following provision of the FDCPA:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1). No exception exists in the statute for a fee that is voluntary or optional. It is an open and shut case: when Ocwen collects any portion of this fee, it violates the FDCPA.

To state a claim under this provision, the plaintiff need only show that the fee was "collected." 15 U.S.C § 1692f(1). In order to defeat the claim, a debt collector bears the burden of showing that the "amount is expressly authorized by the agreement creating the debt or permitted by law." Id.; Flores v. Collection Consultants, 2015 WL 4254032, slip op. at *8 (C.D. Cal. Mar. 20, 2015) ("the burden of proving a statutory exception falls on the party seeking to reap the benefit of the exception"); Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008) ("To establish that a particular fee does not violate § 1692f(1), the debt collector must identify a state law that authorizes the fee"). In a Staff Commentary, the Federal Trade Commission explained that this provision prohibits any charge if either "(A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988).

The cases that have considered the issue have held that no violation of section 1692f(1) occurs where a third party processor keeps the entire convenience fee for itself but that a violation does occur where a part of the fee is paid to the owner of the loan or its servicing company. An illustrative recent case is Acosta v. Credit Bureau of Napa County, 2015 WL 1943244 (N.D. Ill. April 29, 2015). There, the defendant debt collector collected a $14.95 fee for telephone or online payments for a debt covered by the FDCPA. Plaintiff brought a claim under FDCPA § 1692f(1),

and the defendant moved to dismiss, arguing that collection means "'to claim as due and receive payment for,' and the $14.95 credit card processing fee was never claimed as due." Id., slip op. at *2. Thus, the defendant in Acosta maintained that the fee was never "collected" by the loan servicing company within the meaning of the statute.

The district court rejected this defense argument. The court analyzed other decisions that had found processing fees legal and determined that the central question was whether the fee at issue was a "pass-through fee," which was retained entirely by the third-party processor.

> The conflicting outcomes in Longo and Mann[2] principally arose from their differing interpretations of the Sixth Circuit decisions. While both Sixth Circuit decisions dismissed Section 1692f claims, the Court in Longo found them to be materially distinguishable. Longo Opinion at 7–8. In those cases, the fee received by the defendant was a pass-through fee and, therefore, the defendant was not collecting any additional compensation from the fee. Id. at 6–8. The record in Longo, by contrast, did not show that the defendant was merely collecting a pass-through fee. Id. at 7–8.2 Thus the Court denied the motion to dismiss. Id. at 1, 11.
>
> *3 The Court in Shami,[3] 2010 WL 3824151, at *3–4, concurred with Longo, found Mann's reliance on the Sixth Circuit decisions misplaced and denied the motion to dismiss there. More recent federal decisions from New York have concurred with Shami. See Campbell v. MBI Associates, Inc., No. 12–989, ––– F.Supp.3d ––––, 2015 WL 1543215, at *9–13 (E.D.N.Y. March 31, 2015); Quinteros v. MBI Associates, 999 F.Supp.2d 434, 439–41 (E.D.N.Y.2014). No recent case from this Circuit has addressed the issue.
>
> The definitions of "collect" corroborate the holdings in Longo and Shami. While, as Mann shows and as Defendant argues, "collect" can be defined to require a presentation of an amount due, there are broader definitions of the word. For example, Plaintiff cites Merriam–Webster's definition of "collect" as: "to receive payment." In light of the liberal construction afforded to the FDCPA to protect consumers, see Ramirez v. Apex Financial Management LLC, 567 F.Supp.2d 1035, 1041–42 (N.D.Ill.2008), this Court finds that the broader interpretation of "collect" is warranted here. Analogous to here, the Court in Ramirez construed a different term, "communication," broadly to effectuate the FDCPA's legislative intent, which emphasized the need to protect consumers. See also Longo Opinion at 5–6, 8.

---

[2] Longo v. Law Offices of Gerald E. Moore & Assocs., P.C., No. 04-5758 (N.D. Ill. Feb. 3, 2005); Mann v. Nat'l Asset Mgmt. Enters., Inc., No. 04-1304 (C.D. Ill. Feb. 23, 2005).
[3] Shami v. Nat'l Enterprise Sys., 2010 WL 3824151 (E.D.N.Y. 2010).

> It follows from this Court's construction of the term "collect" and analysis of the case law that Sections 1692f is applicable here. The record currently before this Court does not show that the $14.95 processing fee was a pass-through fee initiated by the credit card provider, so the exception observed by Longo and Shami is inapplicable.
>
> Because Sections 1692f applies, this Court next must consider whether the $14.95 credit card processing fee was: (1) authorized by agreement between the parties; or (2) permitted by law. 15 U.S.C. § 1692f(1). Under the second prong, a debt collector may not collect any amount if either: "(A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent." FTC Staff Commentary on the FDCPA, 53 Fed.Reg. 50,097, 50,108 (Dec. 13, 1988).

Acosta v. Credit Bureau of Napa County, 2015 WL 1943244 (N.D. Ill. April 29, 2015). Here, Plaintiff has stated a claim by alleging that Ocwen receives a portion of the Speedpay fee as a kickback from Western Union. Plaintiff alleged not just that the kickback occurs, but that Western Union markets it to businesses, stating that Western Union can lead customers to "more profitable payment channels." (Doc. 27 at 5). It is clearly more profitable for Ocwen to receive a kickback from Western Union than not to do so. Thus, Plaintiff has clearly alleged that Ocwen "collected" money from the Plaintiff that is not authorized by the contract, in violation of the FDCPA.

Other federal cases have agreed with the Acosta court and the cases it relies on to hold that fees that are not entirely retained by a third-party processor violate the FDCPA. For example, in Weast v. Rockport Financial, LLC, the Eastern District of Missouri reasoned that a $3.00 convenience fee would be prohibited by the FDCPA if the defendant received any profit from it:

> The Court also rejects Defendant's argument that the $3.00 convenience fee is not prohibited by the FDCPA, as a matter of law, because it relates to an additional service by a third-party. Defendant's reliance on Lee v. Main Accounts, Inc., No 96–3922, 125 F.3d 855 (table), 1997 WL 618803 (6th Cir. Oct. 6, 1997), is misplaced. In that case the court determined on summary judgment that a five percent charge on payments made by credit card did not violate the FDCPA, because the defendant "would not have received any additional compensation from the credit card fee." Such evidence may be forthcoming at the summary judgment stage, but based on the record before it, the Court cannot say that Defendant would not receive any profit from charging $3.00 for each credit/debit card transaction.

> The Court is not persuaded that the convenience fee is separate from the "principal obligation" and thus does not fall under § 1692f(1). Such a conclusion is contrary to a liberal construction of § 1692f(1) which prohibits the collection of "any amount" which is not provided for in the contract or authorized by state law, "including any interest, fee, charge, or expense incidental to the principal obligation."15 U.S.C. § 1692f(1). See Campbell v. MBI Assoc., Inc., No. 12–CV–989 (SLT)(CLP), ––F.Supp.3d ––––, ––––, 2015 WL 1543215, at *12 (E.D.N.Y. Mar. 31, 2015); Quinteros v. MBI Assocs., Inc., 999 F. Supp. 2d 434, 438 (E.D.N.Y.2014).
>
> *4 The Court must also reject Defendant's argument that the convenience fee charge in the collection letter here did not violate the FDCPA because it was clear from the letter that this fee would only be charged if Plaintiff chose to pay with a credit or debit card, and that another payment option was available. There is some authority supporting Defendant's position. See, e.g., Lee, 1997 WL 618803, at *1 ("[Defendant] did not force [Plaintiff] to pay any surcharge.... [T]his type of optional payment choice is, by definition, not an unconscionable or deceptive debt collection practice"). However, other courts have found that offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA. See Shami v. Nat'l Enter. Sys., No. 09–CV–722 (RRM) (VVP), 2010 WL 3824151, at *3–4 (E.D.N.Y. Sept. 23, 2010) (holding that the defendant's charging of transaction fees for payments by phone or internet were still fees "incidental to Plaintiff's purported actual debt" prohibited by § 1692f(1), even though they were conditioned on the chosen method of payment; collecting cases). This approach appears to the Court to be correct. Thus, the Court will deny Defendant's motion to dismiss as to Plaintiff's claim under § 1962f(1).

2015 WL 4427281 at *3-4 (E.D. Mo. July 17, 2015). The only difference between this case and Weast is that the Speedpay fee is considerably larger than $3.00. This Court should likewise reject the idea that the fee is not prohibited by the FDCPA solely because it is imposed by a third party or because the customer could have avoided it.

Perhaps the best explanation of the distinction between a legal pass-through fee and a fee that violates the FDCPA can be found by comparing the two opinions in Shami v. National Enterprise Systems. 2010 WL 3824151 (E.D.N.Y. Sep. 23, 2010); 914 F. Supp. 2d 353 (E.D.N.Y. 2012). In the first of these opinions, the District Court denied a motion to dismiss:

11

> The Court concludes that Plaintiff has stated a claim under § 1692f(1). The court in Longo rested its decision on the FDCPA's prohibition on the collection of any fee in excess of the underlying debt unless authorized by prior agreement or state law. Likewise, this Court concludes that the fees outlined in the Collection Letter at issue, like the pay-by-phone fees discussed in Longo, are incidental to Plaintiff's purported actual debt. Next, it is unclear at this stage of this litigation whether the underlying contract between Plaintiff and the original creditor contemplated future transactional fees—that is, whether Plaintiff previously agreed to pay charges in excess of his actual debt in the event that he defaulted under the agreement. Finally, there is no evidence that the fees at issue were simply Defendant's attempt to pass the costs of third-party charges to Plaintiff, or, as Plaintiff alleges, a method of obtaining increased compensation through the impermissible collection of service charges in addition to the underlying debt.

Shami, 2010 WL 3824151 at *4. In other words, this first Shami opinion represents the stage of the case that now exists in this case. Like the Shami court, this Court has before it an allegation that the fees charged by a debt collector are improper and violate the TCPA. Because Plaintiff has alleged that the debt collector retains a portion of the fees charged, the case should not be dismissed at this stage.

Plaintiff firmly believes that the evidence in this case will demonstrate that Ocwen did actually receive a portion of the fees, thus violating the FDCPA. The plaintiff in Shami, however, was ultimately unable to prove this point. Therefore, at the summary judgment stage, the court held that the fees did not violate the FDCPA because they were entirely collected by a third party and no portion was retained by the debt collector:

> Defendant's motion for summary judgment is accompanied by two affidavits that demonstrate that ITS, not NES, collected and retained any fees associated with paying online or through the automated phone system referred to in the Collection Letter. One affidavit is from Corporate Counsel for Online Resources Corporation ("ORC"), formerly known as Internet Transaction Solutions, Inc. ("ITS"), and *358 another from the Director of Collections for NES. (Stanton Aff. ¶ 2; Taylor Aff. ¶ 2.) Both affidavits state, inter alia, that: ITS provides payment processing services, that there is a fee for these services, that the fee was not and never has been charged by NES, that ITS receives the service fees directly from consumers, and that ITS does not share any portion of the service fees with NES. (Stanton Aff. ¶ 5, 6; Taylor Aff. ¶ 5, 6.) Attached to these affidavits is a copy of an agreement between ITS and NES, dated February 12, 2002, that states, "ITS fees for User payment management

12

> services may be charged to Users, [NES] or allocated between Users and [NES]." (Stanton Aff. Ex. 1; Taylor Aff. Ex. 1.) In other words, the contract specifies that ITS fees will be charged to users and potentially to NES, but it does not specify that NES will collect or share in those charges.

Shami, 914 F. Supp. 2d at 357-58. The court credited these affidavits and read the agreement to demonstrate that the defendant did not receive (and thus under the FDCPA did not "collect") any portion of the fees charged to the plaintiff. Id. at 358-59. Again, Plaintiff plans to present evidence in this case that will show the opposite—that Ocwen received a portion of the Speedpay fees that Mr. Fielder and Mr. McWhorter paid. But if Ocwen can demonstrate that it received nothing, then the Court at that stage of the proceeding should follow Shami as well. At this stage, a dismissal of the case is inappropriate.

Ocwen ignores the controlling fact that when a consumer pays Ocwen through Western Union's SpeedPay system, only a portion of that fee pays Western Union for processing the payment. The rest is remitted back to Ocwen and retained by it. Plaintiffs have properly alleged this fact in the Third Amended Complaint (Doc. 50 at Paragraph 32). "The allegations in the complaint are taken as true and construed in the light most favorable to the Plaintiffs." Rivell v. Private Health Care Sys., 520 F.3d 1308, 1309 (11th Cir. 2008). Ocwen does not (and Plaintiffs believe cannot) challenge this factual assertion, nor does it cite a single case in which a Court noted that the debt collector received all or part of the fee and held that it did not violate the FDCPA.

In fact, the cases Ocwen cites in support of its position include cases where the defendant won because it was a pass-through fee and the debt collector did not keep any part of the fee. In Lee, for example, cited in Ocwen's brief, the Sixth Circuit held that the FDCPA was not violated when

> "the five-percent transaction fee mentioned in the letter is not a fee collected by Main Accounts, but a third-party charge triggered when the debtor chose the option of paying by credit card."

1997 WL 618803 at *1. In addition, the Lee court noted that the debt collector "would not have received any additional compensation from the credit card fee." Id.

Ocwen argues that simply having other payment options that do not impose a fee means that any fee for the remaining options is permissible. Yet the very cases they cite clearly demonstrate that this is not the state of the law. Rather, the Courts examine both the optional nature of the fee and whether the fee, or some portion thereof, was actually collected by the debt collector. Flores v. Collection Consultants of Cal., 2015 WL 4254032 at *9 (C.D. Cal. March 20, 2015) ("The cited cases both supported the proposition that the transaction fee at issue was permissible where there were other payment options **and the charge did not inure benefits to the collector.**") (emphasis added). In Flores, no benefit inured to the debt collector because the fee it charged did not actually cover the processing cost. Id. at 12. As noted above, the Weast court directly rejected the idea that the voluntary nature of the fee rendered it legal under the FDCPA. 2015 WL 4427281 at *3-4 (finding that the "correct" approach holds the fees illegal "even though they were conditioned on the chosen method of payment").

Ocwen cites, and Plaintiffs can find, no case in which the Court notes that the debt collector receives some or all of the imposed fee and finds no violation of the FDCPA.

Ocwen argues that a 1988 Staff Commentary on the FDCPA authorizes the type of charge at issue here, but the Weast court disagreed, citing that same Staff Commentary for the proposition that "a debt collector may not collect an additional amount if . . . the contract does not provide for collection and state law is silent." 2015 WL 4427281 at *3 (E.D. Mo. July 17, 2015) (citing Staff Commentary on the FDCPA, 53 Fed Reg. 50,097, 50,108. (Fed. Trade Comm'n 1988). Additionally Ocwen's argument that rulings concerning the Truth in Lending Act ("TILA") somehow govern statutory interpretation of the FDCPA is likewise unavailing. The deciding factor

14

in a TILA case appears to be whether the lender would have extended credit with or without the challenged fee. See Veale v. Citibank, F.S.B., 85 F.3d 577, 579 (11th Cir. 1996). No such issue exists in the FDCPA context.

The case law also stands directly against the idea that the fees do not violate the FDCPA if state law is silent on the issue. Most courts, instead, follow the framework established by the Second Circuit in Tuttle:

> If state law expressly permits service charges, a service charge may be imposed even if the contract is silent on the matter;
>
> If state law expressly prohibits service charges, a service charge cannot be imposed even if the contract allows it;
>
> If state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract.

Tuttle v. Equifax Check, 190 F.3d 9 (2d Cir. 1999). As noted by the Weast court, Ocwen's attempt to argue that the fees are allowed where state law is silent lacks merit. Weast v. Rockport, LLC, 2015 WL 4427281 at *3 (E.D. Mo. July 17, 2015) (adopting holding from other circuits that "when state law does not affirmatively authorize or prohibit service charges, a service charge may only be imposed if the customer expressly agreed to it in the contract which gives rise to the debt.")

The Consumer Financial Protection Bureau reached the same conclusion regarding the interplay of the FDCPA and state law. Protection Finance Bureau, http://files.consumerfinance.gov/f/201410_cfpb_supervisory-highlights_fall-2014.pdf (last accessed Aug. 22, 2015). The Report contains the following section:

> **2.2.1 Unlawful imposition of convenience fees**
> The FDCPA limits the situations where a debt collector may impose convenience fees. One limit is when state law is silent regarding the legality of imposing convenience fees and the contract creating the debt does not authorize the

15

> imposition of such fees. In one or more examinations of debt collectors, examiners observed that convenience fees, which ranged from $5 to $14, were imposed if a consumer made payment using either a credit or a debit card. Due to a systems failure, fees were imposed on consumers who lived in states where state law prohibited the collection of such convenience fees. One or more collectors also imposed convenience fees on consumers who lived in states where the law was silent regarding the collection of fees without reviewing the agreements creating the consumer debts to find out if those agreements expressly authorized the collection of such fees. Supervision directed these collectors to identify consumers who were improperly charged convenience fees, and to develop a plan for reimbursing those consumers.

Id. Clearly the CFPB believes that the fees violate the FDCPA unless they are specifically authorized by state law, and it intends to enforce this reading.

In addition to the federal courts cited above, three states have issued administrative opinions declaring that convenience fees for processing payments online and over the telephone violate language identical or very similar to the FDCPA. These state opinions provide persuasive authority to interpret identical language in the federal statute. In Wyoming, Attorney General Bruce Salzburg wrote, in a letter to a member of Wyoming's Collection Agency Board, that such fees violated Wyoming law precisely because they violated the FDCPA. (Doc. 50-3 – Letter from Bruce Salzburg to Rocklon Edmonds). Since the fees are incidental to the debt, "for a collection agency operating in Wyoming to be authorized to charge a convenience fee … the fee must be permitted by law or expressly authorized by the agreement creating the debt." Id.

Colorado's analogous state statute is virtually identical to the FDCPA on this issue.[4] The Attorney General of that state opined:

> A payment convenience fee is incidental to the principal obligation. Consequently, a collection agency may not demand, collect, or attempt to collect a payment

---

[4] Colorado §12-14-108(1)(a):
   (1) A debt collector or collection agency shall not use unfair or unconscionable means to collect or attempt to collect any debt, including but not limited to, the following conduct.
      (a) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

>convenience fee for any particular payment method unless the underlying agreement creating the debt expressly provides for such fees, or if they are expressly permitted by law.

(Doc. 50-2 – Colorado AG opinion). On June 12, 2014, North Carolina's Insurance Commissioner interpreted similar language in that state's law to bar the fees as well. (Doc. 50-3 – NCDOI Letter). These state administrative opinions provide a logical and persuasive template for interpreting the federal language according to its plain meaning.

Ocwen also makes the argument that its national settlement with the Consumer Protection Bureau somehow entitles it to violate the FDCPA. "In signing on to the National Mortgage Settlement with Ocwen, the CFPB agreed that Ocwen "may collect a default-related fee" if [1] the fee is not prohibited by law, this Agreement or the loan instruments *and* [2] is a reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower." (Doc. 58 at 18 (quoting Consumer Fin. Prot. Bureau v. Ocwen Loan Serv., LLC., No. 1:13-CV-02025, Consent Judgment (D.D.C., signed Feb. 26, 2014) (CM/ECF No. 12-1, at A-39) (bracketed numbering and emphasis added [by Ocwen]). This argument is ridiculous on its face because the only way the settlement allows the fee is if it is not prohibited by law. The settlement says absolutely nothing about whether a particular fee is, in fact, prohibited by the FDCPA or not.

Ocwen's claim that the Speefpay fee is expressly authorized by the Electronic Funds Transfer ACT ("EFTA") also lacks merit. 15 U.S.C. § 1693 et seq.  That statute does not authorize any fees. It simply regulates the reasonableness of fees imposed, and thus serves as a separate and broader regulation of EFT's. Ocwen cites to no case, and Plaintiff knows of none, holding that the EFTA permits the charging of any fee that would otherwise be forbidden by the FDCPA.

### III.     Conclusion

Ocwen's motion to dismiss should be denied in its entirety. Ocwen is a debt collector under the FDCPA with respect to both Mr. Fielder and Mr. McWhorter. As such, it is subject to the requirements of the FDCPA, which it violated by charging a convenience fee to pay over the telephone.

Respectfully submitted,

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Dargan Ware (WAR089)
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com

**CERTIFICATE OF SERVICE**

  I hereby certify that I have served a copy of the above and foregoing document by Electronic Filing, or, if the party does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 17[h] day of January, 2016:

Daniel R. Taylor, Jr.
Joseph S. Dowdy
Susan H. Boyles
KILPATRICK TOWNSEND & STOCKTON   LLP
1001 West Fourth Street
Winston Salem, NC 27101

Michael R. Pennington
Robert J. Campbell
BRADLEY ARANT BOULT CUMMINGS   LLP
1819 5th Ave. North.
P.O. Box 830709
Birmingham, Alabama 35203-2119

John W. Scott
SCOTT DUKES & GEISLER PC
211 22nd Street North
Birmingham, AL 35203

            /s/ John E. Norris_____
            John E. Norris
            One of the Attorneys for Plaintiff