UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HAROLD McWHORTER and ROBERT FIELDER,** | } } } |
| **Plaintiff,** | } } |
| v. | } Case No.: 2:15-cv-01831-MHH } |
| **OCWEN LOAN SERVICING, LLC and WESTERN UNION BUSINESS SOLUTIONS (USA), LLC,** | } } } } } |
| **Defendants.** | } |

## MEMORANDUM OPINION AND ORDER

In this putative nationwide class action, plaintiffs Harold McWhorter and Robert Fielder allege that defendants Ocwen Loan Servicing, LLC and Western Union Business Solutions (USA), LLC violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(1), by charging customers a convenience fee to make loan payments online and over the telephone. (Doc. 2, ¶¶ 1–2, 9, 11–12). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants ask the Court to dismiss the plaintiffs' amended complaint. (Docs. 9, 11).[1] For the reasons

---

[1] Ocwen also asks the Court to dismiss the plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 9, p. 3). The defendants contend that because the plaintiffs told Ocwen customer service agents in March and July of 2015 that they were not represented by counsel, "a cloud of doubt exists" as to whether the plaintiffs "authorize counsel to act on their behalf." (Doc. 9, pp. 5–7). To eliminate this doubt and to ensure that a case or controversy exists under Article III of the United States Constitution, the defendants ask the

stated below, the Court grants Western Union's motion to dismiss (Doc. 11), denies Ocwen's motion to dismiss with respect to Mr. Fielder (Doc. 9), and defers ruling on Ocwen's motion to dismiss with respect to Mr. McWhorter (Doc. 9) pending a period of limited discovery.

I. **RULE 12(b)(6) STANDARD**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint—or in this case, an amended complaint—must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In considering a defendant's motion to dismiss a complaint, a district court generally accepts the plaintiff's allegations as true and asks whether the plaintiff alleges facts that allow the district court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Maledy v. City of Enter.*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012).

---

Court to require an "affidavit or signed declaration from the Plaintiffs . . . confirming that they do continue to authorize counsel to act on their behalf." (Doc. 9, p. 6).

Rule 11 of the Federal Rules of Civil Procedure provides a safeguard against the potential for an attorney to file a lawsuit on behalf of a client without the client's consent. The plaintiffs' attorneys have sworn pursuant to Rule 11 that the plaintiffs authorized them to prosecute this lawsuit and that the Court has subject matter jurisdiction over this action. (Doc. 2, ¶¶ 5, 13, 25). On the basis of these representations, the Court is satisfied that it may exercise subject matter jurisdiction over this case. Accordingly, the Court denies Ocwen's motion to dismiss this action pursuant to Rule 12(b)(1).

A district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

In its motion to dismiss, Ocwen challenges the merits of some of the factual allegations in the plaintiffs' amended complaint. In doing so, Ocwen relies on documents that are central to the plaintiffs' claims. In resolving the motions to dismiss, the Court may consider these documents without converting Ocwen's motion to dismiss into a motion for summary judgment because the documents are central to the plaintiffs' claims, and no party challenges the authenticity of the documents. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1053 n. 12 (11th Cir. 2015).

## II. BACKGROUND

Mr. McWhorter and Mr. Fielder purchased homes using consumer loans. (Doc. 2, ¶ 7). Ocwen eventually acquired servicing rights to the loans. (Doc. 2, ¶ 8). Mr. Fielder's loan was in default when Ocwen acquired it. (Doc. 2, ¶ 8). Mr. McWhorter alleges that his loan was in default when Ocwen acquired it, but Ocwen challenges the allegation. (*See* Doc. 2, ¶ 8; Doc. 16, p. 3).

When Mr. McWhorter and Mr. Fielder made loan payments to Ocwen online and over the telephone, Ocwen and Western Union charged convenience fees, or "Speedpay" fees, to process those payments. (Doc. 2, ¶¶ 9, 11). Western Union

collected the fees from Mr. McWhorter and Mr. Fielder and remitted a portion of the fees to Ocwen. (Doc. 2, ¶ 11).

Mr. McWhorter and Mr. Fielder assert that the defendants' imposition of the Speedpay fees and Western Union's remittance of a portion of those fees to Ocwen violate the FDCPA. (Doc. 2, ¶¶ 20, 22, 33, 35). Mr. McWhorter and Mr. Fielder seek class certification for their FDCPA claims, declaratory and injunctive relief, statutory damages, and attorney's fees and costs. (Doc. 2, p. 9).[2]

## III. DISCUSSION

Mr. McWhorter and Mr. Fielder allege that Ocwen and Western Union violated the FDCPA by charging them a Speedpay fee to pay their loans online and over the telephone. (Doc. 2, ¶¶ 20, 22, 33, 35). Ocwen and Western Union argue that because the FDCPA applies only to debt collectors and because neither of them is a debt collector with respect to the plaintiffs, the Court should dismiss this action. (Docs. 9, 11). Ocwen also argues that, even if it is a debt collector, the

---

[2] Mr. McWhorter and Mr. Fielder seek to represent two nationwide classes pursuant to Federal Rule of Civil Procedure 23. With respect to their claim against Western Union, Mr. McWhorter and Mr. Fielder seek to represent a class of "[a]ll individuals in the United States who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a loan being serviced by a debt collector as defined by the FDCPA." (Doc. 2, ¶ 14). With respect to their claim against Ocwen, Mr. McWhorter and Mr. Fielder seek to represent a class of "[a]ll individuals in the United States who, during the applicable limitations period paid a convenience fee through Western Union's Speedpay service in connection with any loan being serviced by Ocwen, and as to which Ocwen obtained those servicing rights at a point in time when the loan was in default." (Doc. 2, ¶ 26).

4

Court should dismiss the plaintiffs' claims because, as a matter of law, Speedpay fees do not violate the FDCPA. (Doc. 9).

### A. Western Union's motion to dismiss

"[W]hether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 581–82 (11th Cir. 2012). Because the plaintiffs' factual allegations, taken as true, do not allow the Court to draw the reasonable inference that Western Union is a debt collector, the plaintiffs have failed to state a claim against Western Union. *See* p. 2, above.

The FDCPA defines "debt collector" as one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In addition, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *Id.* In their amended complaint, Mr. McWhorter and Mr. Fielder state that "Western Union regularly collects or attempts to collect, directly or indirectly, debts owed another and it is therefore a debt collector within the meaning of the FDCPA." (Doc. 2, ¶ 21). The Court does not credit this "formulaic recitation of the elements of a[n FDCPA claim]." *Iqbal*, 556 U.S. at 678.

Mr. McWhorter and Mr. Fielder also allege that Western Union acted as Ocwen's "partner . . . in facilitating their debt collection activity" by "demand[ing] an additional payment [from the plaintiffs] in the form of a fee for using Speedpay." (Doc. 2, ¶¶ 11, 21). According to the plaintiffs, "Western Union collected this money from Plaintiffs and remitted a portion of it back to Ocwen." (Doc. 2, ¶ 11). These allegations do not support the reasonable inference that Western Union "regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another" or that Western Union is a "business the principal purpose of which is the collection of . . . debts." 15 U.S.C. § 1692a(6).

Instead, the plaintiffs' allegations indicate that Western Union provided a service to Ocwen and the plaintiffs, and Western Union received payment for that service. As the plaintiffs state in their amended complaint, the money that Western Union allegedly collected "both on its own behalf and on behalf of [Ocwen]" was not debt, but rather "an additional payment." (Doc. 2, ¶ 11). Accordingly, the plaintiffs have not plausibly alleged that Western Union is a debt collector within the meaning of the FDCPA, and the Court grants Western Union's motion to dismiss the plaintiffs' amended complaint. (Doc. 11).

### B. Ocwen's motion to dismiss

#### 1. Whether Ocwen is a debt collector

Ocwen argues that it is not a debt collector with respect to Mr. McWhorter because Mr. McWhorter's loan was not in default when Ocwen acquired servicing rights to it. (Doc. 9, pp. 12–15). With respect to Mr. Fielder, Ocwen argues that it did not act as a debt collector because a bankruptcy court discharged Mr. Fielder's personal debt in 2013. (Doc. 9, pp. 8–12).

##### a. Mr. McWhorter

Under the FDCPA, a person who acquires servicing rights to a debt is not a debt collector for purposes of that debt if the debt "was not in default at the time it was obtained." 15 U.S.C. § 1692a(6)(F)(iii); *see Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). The FDCPA does not define default. Instead, "'the determination of whether a debt is in default is to be made by a court on a case-by-case basis, and . . . applicable contractual or regulatory language defining the point of default may be instructive.'" *Church v. Accretive Health, Inc.*, 2014 WL 7184340, at *3 (S.D. Ala. Dec. 16, 2014) (quoting *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F.Supp. 2d 430, 440 (E.D.N.Y. 2013)) (alteration supplied by *Church*).

When Ocwen acquired Mr. McWhorter's loan on February 15, 2013, Mr. McWhorter had completed a trial loan modification that he and his prior loan

7

servicer, GMAC Mortgage, LLC, had entered as a prerequisite for Mr. McWhorter's participation in the United States Treasury Department's Home Affordable Modification Program (HAMP). (Doc. 9-1, ¶ 28; Doc. 9-7, pp. 2–3). Under the HAMP guidelines, "[s]uccessful completion [of the trial period] means that the borrower is current (under the MBA delinquency calculation) at the end of the Trial Period."[3] Ocwen argues that, because Mr. McWhorter's completion of the trial period brought him current on his loan with GMAC, Mr. McWhorter's loan was not in default under the FDCPA when Ocwen acquired it. (*See* Doc. 18, p. 6). Mr. McWhorter contends that an individual who is "current" under the HAMP guidelines for purposes of the MBA delinquency calculation is not necessarily current for purposes of an FDCPA claim and that Mr. McWhorter was in default on his original mortgage until he and Ocwen entered into a permanent loan modification agreement on March 1, 2013. (*See* Doc. 16, p. 6; Doc. 30, p. 32).[4]

The Court agrees that the HAMP guidelines are not dispositive of whether Mr. McWhorter was in default when Ocwen acquired his loan from GMAC, but

---

[3] The guidelines can be viewed at https://www.treasury.gov/press-center/press-releases/Documents/modification_program_guidelines.pdf. No party challenges the authenticity of the guidelines, and the Court may take judicial notice of them. FED. R. EVID. 201.

[4] "MBA" stands for Mortgage Bankers Association. Under the MBA convention, "a loan is 'past due' when a scheduled payment is unpaid for 30 days or more." OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF THE TREASURY, *OTS Mortgage Metrics Report*, https://www.occ.gov/static/news-issuances/ots/press-releases/ots-pr-2008-27a.pdf (last visited June 13, 2017).

the guidelines are instructive. *See Church*, 2014 WL 7184340, at *3. Here, they weigh in favor of a finding that Mr. McWhorter's loan was not in default when Ocwen acquired it.

The Seventh Circuit Court of Appeals reached a similar conclusion in *Bailey v. Security National Servicing Corporation*, 154 F.3d 384, 387 (7th Cir. 1998). In that case, the court of appeals found that plaintiffs "who initially defaulted on their home mortgage loan but later negotiated a forbearance agreement which gave them a fresh start" were not in default on their debt within the meaning of the FDCPA when the defendants acquired their loan. *Bailey*, 154 F.3d at 385, 387. The Court reasoned that "[c]ommon sense and the plain meaning of the [FDCPA] require that we distinguish between . . . a defaulted debt and . . . a debt owed under a brand new payment plan." *Id.* at 387. Failure to make such a distinction, the *Bailey* court explained, would be equivalent to "saying that a debtor in default can never have his slate wiped clean or [be] given a last chance to become credit-worthy under a new plan." *Id.*

The record in this case demonstrates that, based on Mr. McWhorter's completion of the trial modification, Ocwen entered into a permanent loan modification agreement with Mr. McWhorter on March 1, 2013. (Doc. 9-8). This permanent modification is the type of "brand new payment plan" contemplated by the Seventh Circuit Court of Appeals in *Bailey*, and Mr. McWhorter concedes that

9

his loan no longer was in default after he and Ocwen entered into the permanent modification. *See* p. 8, above. It is unclear at this juncture, however, whether the trial loan modification that Mr. McWhorter completed before Ocwen acquired his loan also constitutes a "renegotiated payment plan" that supersedes the original loan agreement. *Bailey*, 154 F.3d at 387.

Without considering additional documentation related to the trial loan modification, the Court cannot determine whether the trial loan modification was a superseding agreement that gave Mr. McWhorter a "fresh start," as in *Bailey*, or merely a set of payments that rendered Mr. McWhorter eligible for the permanent modification but did not affect his status under the original loan agreement. Accordingly, the Court defers ruling on whether Ocwen is a debt collector until the Court reviews additional documents related to the trial modification.

### b. Mr. Fielder

To state a plausible claim under the FDCPA, Mr. Fielder must allege not only that Ocwen is a debt collector, but also "'that [Ocwen's] challenged conduct is related to debt collection.'" *See Pinson v. JP Morgan Chase Bank, Nat'l Ass'n*, 646 Fed. Appx. 812, 814 (11th Cir. 2016) (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012)). Ocwen argues that Mr. Fielder has not plausibly alleged that the company is a debt collector or that the company's conduct with respect to Mr. Fielder was related to debt

collection because "any debt [Mr. Fielder] personally had on his home loan was discharged in bankruptcy" before the challenged conduct occurred. (*See* Doc. 9, p. 8). The Court disagrees.

On March 26, 2013, after Ocwen acquired servicing rights to Mr. Fielder's loan, Mr. Fielder filed a Chapter 7 bankruptcy petition. (Doc. 1 in Case 13-01384, United States Bankruptcy Court, Northern District of Alabama).[5] On June 24, 2013, the Bankruptcy Court entered an order granting Mr. Fielder "a discharge" under Chapter 7 of the Bankruptcy Code. (Doc. 18, p. 1 in Case 13-01384); *see also* 11 U.S.C. § 727. The order includes a list of debt categories that were not discharged, and the list does not include home loans. (Doc. 18, p. 2 in Case 13-01384). The Court reasonably infers, and the parties do not dispute, that Mr. Fielder's home loan was discharged by the June 24, 2013 order.

After the Bankruptcy Court discharged Mr. Fielder's legal obligation to pay his home loan debt, Ocwen sent Mr. Fielder monthly statements entitled "Special Notice In The Event You Have Filed Bankruptcy." (Doc. 9-1, ¶ 19; *see also* Doc. 9-3, p. 2). One such notice states:

> If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this notice is not

---

[5] The record for Mr. Fielder's bankruptcy action is available on PACER. The Court takes judicial notice of that record. *Bobadilla v. Aurora Loan Servs., LLC*, 478 Fed. Appx. 625, 627 (11th Cir. 2012) ("'A court may take judicial notice of its own records and the records of inferior courts.'") (quoting *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987)). The Court cites to Mr. Fielder's bankruptcy records by document and case number.

intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this notice is sent to you only as a preliminary step to an 'In Rem' foreclosure on the mortgage against the above-referenced property. Provisions may be contained within the mortgage/deed of trust that require[] notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

. . .

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust. As of **June 9, 2015**, the following amounts are past due:

| | |
|---|---|
| Principal and Interest | $2,686.38 |
| Interest Arrearage | $0.00 |
| Escrow | $1,290.57 |
| Late Charges | $266.34 |
| Insufficient Funds Charges | $0.00 |
| Fees/Expenses | $20.00 |
| Suspense Balance (CREDIT) | $0.00 |
| Interest Reserve Balance (CREDIT) | $0.00 |
| **TOTAL AMOUNT PAST DUE** | **$4,263.29** |

On or before July 17, 2015, payment may be remitted by [*sic*] us via money transfer, bank check, money order or certified funds for the entire total amount past due to the appropriate address listed at the bottom of page two of this notice. Any amount(s) that become due in the interim must also be received.

. . .

If the account is not brought current in a timely manner, it may result in our election to exercise our right to foreclose on the property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are

entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs.

. . .

After acceleration of the debt, but prior to foreclosure, the mortgage loan may be reinstated, depending on the terms of the note and mortgage, any payments received and/or any relevant prior court order. We encourage you to review the provisions of the note and mortgage. Please be aware that, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the mortgage agreement, in addition to the overdue amount on the mortgage. Any payment to reinstate the mortgage loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount to reinstate the mortgage loan will be returned and will not stop any foreclosure proceedings that have begun. **PRIOR TO SUBMITTING A PAYMENT, PLEASE CALL US TO VERIFY THE EXACT AMOUNT DUE ON THE ACCOUNT.**

(Doc. 9-3, pp. 3–4) (emphasis in notice).[6] The notice lists four methods by which Mr. Fielder may pay the past due amount. (Doc. 9-3, p. 3).

According to Ocwen, the above communication cannot be related to debt collection because Mr. Fielder's personal debt on his home loan ceased to exist after the Bankruptcy Court discharged it. (Doc. 9, p. 8); *see also Arruda v. Sears,*

---

[6] The bottom of each page of the monthly statement contains a disclaimer entitled "Notice Regarding Bankruptcy," which states in relevant part:

> Please be advised that this letter is in no way an attempt to collect either a pre-petition, post petition or discharged debt. . . . If you have received an Order of Discharge in a bankruptcy case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying property and is not an attempt to recover any amounts from you personally.

(Doc. 9-3, pp. 2–6).

*Roebuck & Co.*, 310 F.3d 13, 23 (1st Cir. 2002) (explaining that a "discharge extinguishes . . . the personal liability of the debtor") (citation and internal quotation marks omitted) (alteration provided by *Arruda*). Ocwen argues instead that the above communication—and, indeed, all of the company's challenged conduct—constitutes an attempt to enforce a security interest. (Doc. 9, pp. 8–12). Because, according to Ocwen, "the FDCPA regulates debt collection, and not the enforcement of *in rem* mortgage security interests that remain after [a] debt has been discharged in bankruptcy," Mr. Fielder has failed to state a claim under the FDCPA. (Doc. 9, p. 8).

The fact that conduct may "relate to the enforcement of a security interest does not prevent [that conduct] from also relating to the collection of a debt." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012). Nor does the fact that the Bankruptcy Court discharged Mr. Fielder's debt prevent Ocwen from engaging in debt collection activity with respect to the discharged debt.

In *Roth v. Nationstar Mortgage, LLC*, the district court held that a plaintiff whose debt had been discharged in bankruptcy stated an FDCPA claim where a loan servicer sent her an "Informational Statement" that expressly indicated that it was not an attempt to collect debt yet "list[ed] the total amount due, contain[ed] a payment due date, stat[ed] that a late fee w[ould] be charged for an untimely

payment, [and gave] six possible payment methods." *Roth v. Nationstar Mortg., LLC*, 2016 WL 3570991, *3 (M.D. Fla. July 1, 2016). The district court reasoned that "'if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the [FDCPA].'" *Id.* at *2 (quoting *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014)).

In other words, according to the *Roth* decision, a communication is related to debt collection if "it is made with 'an animating purpose of . . . induc[ing] payment by the debtor.'" *Roth*, 2016 WL 3570991 at *2 (quoting *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1281 (M.D. Fla. 2015)) (alteration provided by *Roth*). To determine whether a communication's animating purpose is to induce payment, the district court stated, courts should look "through the eyes of the least sophisticated consumer." *Roth*, 2016 WL 3570991 at *3 (citation and internal quotation marks omitted).

Viewed through the eyes of the least sophisticated consumer, Ocwen's "Special Notice" appears to have been made with an animating purpose to induce payment by Mr. Fielder. The notice states the past due amount that Mr. Fielder owed on his mortgage, describes how Mr. Fielder may pay that amount, and provides multiple addresses to which Mr. Fielder may send payment. (*See* Doc. 9-3). In addition, the notice "threaten[s] consequences for non-payment." *Roth*,

2016 WL 3570991 at *4; (*see* Doc. 9-3, p. 4) ("If the account is not brought current in a timely manner, it may result in our election to exercise our right to foreclose on the property.").

As in *Roth*, "it is . . . difficult to conceive of any credible reason for [Ocwen] to send the [notice] other than to pressure [Mr. Fielder] into making payments on the mortgage debt for which h[is] personal liability had already been discharged." *Roth*, 2016 WL 3570991 at *3. Also as in *Roth*, Ocwen's disclaimer that the notice was not an attempt to collect debt "'is insufficient to shield [Ocwen] as a matter of law from liability at this stage of the litigation.'" *Id.* (quoting *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1303 (M.D. Fla. 2016). Accordingly, the Court finds that Mr. Fielder has plausibly alleged that Ocwen acted as a debt collector and engaged in conduct related to debt collection with respect to his discharged debt.

## 2. Whether the Speedpay fees violate the FDCPA

Ocwen argues that, even if it were a debt collector that engaged in conduct related to debt collection with respect to Mr. McWhorter and Mr. Fielder, the Court should dismiss the plaintiffs' claims because Speedpay fees do not violate the FDCPA as a matter of law. (Doc. 9, pp. 16–27). The Court disagrees.

15 U.S.C. § 1692f(1) makes it unlawful for a debt collector to collect "any amount (including any interest, fee, charge, or expense incidental to the principal

obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Citing an unpublished Sixth Circuit case and an unpublished district court case from California, Ocwen argues that the Speedpay fees in question here do not violate the FDCPA because the fees were optional and avoidable. (Doc. 9, pp. 18–19) (citing *Lee v. Main Accounts, Inc.*, 1997 WL 618803, at *1 (6th Cir. Oct. 6, 1997) and *Flores v. Collection Consultants of Cal.*, 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015)). In addition, Ocwen argues that the Speedpay fees are authorized by the Electronic Fund Transfer Act (EFTA) and are thus "permitted by law." (Doc. 9, pp. 23–27).

The Court is not persuaded by Ocwen's arguments. As the plaintiffs point out in their response brief, Ocwen overlooks the fact that the courts in *Lee* and *Flores* concluded that the convenience fees in those cases did not violate the FDCPA in part because the optional fees "did not inure benefits to the collector." *Flores*, 2015 WL 4254032 at *9. Here, the plaintiffs allege that Ocwen kept a portion of the Speedpay fees. (*See* Doc. 16, p. 12; Doc. 2, ¶ 11). Ocwen has presented, and the Court has found, no controlling case law holding that an additional fee does not violate the FDCPA when, as here, the underlying contract does not authorize the fee and the debt collector receives all or some of the fee.

With respect to Ocwen's argument that the Speedpay fees are permitted by law, the Court agrees with the district court in *Newman v. Checkrite California,*

*Inc.* that "the word 'permitted' requires that the defendants identify some state statute which 'permits,' i.e. authorizes or allows, in however general a fashion, the fees or charges in question." 912 F. Supp. 1354, 1368 (E.D. Cal. 1995). As the Second Circuit explained, "[i]f state law neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract." *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999).

The plaintiffs did not expressly agree to the Speedpay fees in their contracts with Ocwen, and Ocwen has presented no Alabama law that authorizes a debt collector to impose convenience fees and collect a portion of those fees. The EFTA is not a state statute, and, moreover, the EFTA merely "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The EFTA does not authorize a debt collector to collect an additional convenience fee in connection with an amount owed on a principal obligation.

Accordingly, Mr. Fielder has sufficiently alleged that Ocwen violated § 1692f(1) when it charged him Speedpay fees to make mortgage payments. If the Court finds that Ocwen is a debt collector with respect to the Mr. McWhorter (*see* pp. 6–10, above), then Mr. McWhorter will have stated a claim under § 1692f(1).

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Western Union's motion to dismiss the plaintiffs' amended complaint. (Doc. 11). The Court **DENIES** Ocwen's motion to dismiss the plaintiffs' amended complaint with respect to Mr. Fielder (Doc. 9). With respect to Mr. McWhorter, the Court **DEFERS** ruling on Ocwen's motion to dismiss the plaintiffs' amended complaint pending a period of limited discovery.

On or before September 7, 2017, Mr. McWhorter shall submit a copy of his trial modification agreement with GMAC, if such an agreement exists, and any other documentation related to his trial modification that speaks to whether the trial modification superseded his original loan agreement with GMAC.

**DONE** and **ORDERED** this August 3, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE