FILED
2017 Sep-28 AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **HAROLD McWHORTER and ROBERT FIELDER,** | }<br>}<br>} |
| Plaintiffs, | }<br>} |
| v. | } Case No.: 2:15-cv-01831-MHH<br>}<br>} |
| **OCWEN LOAN SERVICING, LLC,** | }<br>}<br>} |
| Defendant. | }<br>}<br>} |

## MEMORANDUM OPINION AND ORDER

In this putative nationwide class action, plaintiffs Harold McWhorter and Robert Fielder allege that defendant Ocwen Loan Servicing, LLC violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(1), by charging customers a convenience fee to make loan payments online and over the telephone. (Doc. 2, ¶¶ 1–2, 9, 11–12). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Ocwen asks the Court to dismiss the plaintiffs' amended complaint. (Doc. 9). The Court previously denied Ocwen's motion to dismiss with respect to Mr. Fielder but deferred ruling on the motion with respect to Mr. McWhorter, pending a period of limited discovery. (Doc. 31). Mr. McWhorter subsequently filed evidentiary material including the Trial Period Plan Agreement that Mr. McWhorter and GMAC Mortgage executed before Ocwen acquired Mr. McWhorter's loan. (Doc.

33). The Court has reviewed this material and now denies Ocwen's motion to dismiss with respect to Mr. McWhorter's claim against Ocwen because these materials indicate that Mr. McWhorter's loan was in a state of default when Ocwen acquired it.

Ocwen asks the Court for the opportunity to respond to Mr. McWhorter's evidentiary material. (Doc. 35). Specifically, Ocwen wishes to demonstrate that it was bound by and complied with federal regulations "by promptly completing the implementation of the permanent loan modification (which had already been preliminarily approved by the prior servicer) effective as of the very first monthly payment due date following service transfer." The Court denies Ocwen's motion to file such a response because a showing that Ocwen implemented a permanent loan modification after it acquired Mr. McWhorter's loan is not relevant to whether that loan was in a state of default when Ocwen acquired the loan.[1]

I. **RULE 12(b)(6) STANDARD**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint—or in this case, an amended complaint—must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In

---

[1] If Ocwen believes that the Court is mistaken, Ocwen may address the issue at the summary judgment stage.

considering a defendant's motion to dismiss a complaint, a district court generally accepts the plaintiff's allegations as true and asks whether the plaintiff alleges facts that allow the district court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Maledy v. City of Enter.*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012). A district court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

In its motion to dismiss, Ocwen challenges the merits of some of the factual allegations in the plaintiffs' amended complaint. In their arguments, the parties rely on documents that are central to the plaintiffs' claims. In resolving the motions to dismiss, the Court may consider these documents without converting Ocwen's motion to dismiss into a motion for summary judgment because the documents are central to the plaintiffs' claims, and no party challenges the authenticity of the documents. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1053 n. 12 (11th Cir. 2015).

## II. BACKGROUND[2]

GMAC Mortgage, LLC was Mr. McWhorter's loan servicer before Ocwen acquired the loan. On November 9, 2012, Mr. McWhorter entered into a Trial Period Plan Agreement with GMAC. (Doc. 33-1, p. 1). According to the letter GMAC sent Mr. McWhorter regarding this agreement:

> This Trial Period plan period will allow you to make a reduced payment for a specified amount of time. Once all scheduled payments have been received, you [sic] situation will be reviewed to determine the best option for resolving the remaining delinquency.

(Doc. 33-1, p. 1). Pursuant to the trial agreement, Mr. McWhorter had to make three payments of $401.05 on December 1, 2012, January 1, 2013, and February 1, 2013. (Doc. 33-1, p. 2). The trial agreement states that "[i]t is expressly understood and agreed that the default is not cured or waived by acceptance of any monies paid hereunder." (Doc. 33-1, p. 3).

On February 7, 2013, GMAC notified Mr. McWhorter by letter that GMAC had received all required payments from Mr. McWhorter and that Mr. McWhorter had "successfully completed the trial period of [his] loan modification program." (Doc. 33-1, p. 10). This letter states:

- No action on your part is required at this time. We will review your account to confirm you meet all of the requirements to move ahead with a permanent loan modification.

---

[2] The Court provided the factual and procedural background of this action in a previous opinion. (Doc. 31, pp. 3–4). The Court will not repeat that discussion here but rather focuses on the facts relevant to the status of Mr. McWhorter's loan when Ocwen acquired the loan from GMAC.

- If you qualify, we will send you the details of your loan modification within 30 days. This includes your new interest rate and mortgage payment amount. You will also receive instructions on how to move ahead with the new plan.

(Doc. 33-1, p. 10).

Ocwen acquired Mr. McWhorter's loan from GMAC on February 15, 2013. (Doc. 9-1, ¶ 28). On March 1, 2013, Ocwen entered into a permanent loan modification agreement with Mr. McWhorter. (Doc. 9-8).

## III. DISCUSSION

Under the FDCPA, a person who acquires servicing rights to a debt is not a debt collector for purposes of that debt if the debt "was not in default at the time it was obtained." 15 U.S.C. § 1692a(6)(F)(iii); *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 992 (11th Cir. 2016). Ocwen argues that it is not a debt collector with respect to Mr. McWhorter because, in Ocwen's view, Mr. McWhorter's loan was not in default when Ocwen acquired servicing rights to it. (Doc. 9, pp. 12–15).

The FDCPA does not define default. Instead, "'the determination of whether a debt is in default is to be made by a court on a case-by-case basis, and . . . applicable contractual or regulatory language defining the point of default may be instructive.'" *Church v. Accretive Health, Inc.*, 2014 WL 7184340, at *3 (S.D. Ala. Dec. 16, 2014), *aff'd and adopted*, 654 Fed. Appx. 990 (11th Cir. 2016)

(quoting *Kapsis v. Am. Home Mortg. Servicing, Inc.*, 923 F.Supp. 2d 430, 440 (E.D.N.Y. 2013)) (alteration supplied by *Church*).

In *Bailey v. Security National Servicing Corporation*, 154 F.3d 384, 387 (7th Cir. 1998), the Seventh Circuit Court of Appeals held that plaintiffs "who initially defaulted on their home mortgage loan but later negotiated a forbearance agreement which gave them a fresh start" were not in default on their debt within the meaning of the FDCPA when the defendants acquired their loan. *Bailey*, 154 F.3d at 385, 387. The Court reasoned that "[c]ommon sense and the plain meaning of the [FDCPA] require that we distinguish between . . . a defaulted debt and . . . a debt owed under a brand new payment plan." *Id.* at 387. Failure to make such a distinction, the *Bailey* court explained, would be equivalent to "saying that a debtor in default can never have his slate wiped clean or [be] given a last chance to become credit-worthy under a new plan." *Id.*

The question before the Court is whether Mr. McWhorter's loan was in default when Ocwen acquired it on February 15, 2013. The answer: it was. Neither the existence of the Trial Period Plan Agreement nor Mr. McWhorter's successful completion of the payments required under that agreement constituted a "renegotiated payment plan" that superseded the original loan agreement. *See Bailey*, 154 F.3d at 387.

First, the Trial Period Plan Agreement between GMAC and Mr. McWhorter was not intended to resolve Mr. McWhorter's delinquency. Instead, it gauged his eligibility for a modification. The agreement states that, if Mr. McWhorter successfully completed the trial period, GMAC would review his situation and determine whether he qualified for a permanent loan modification that would allow him to resolve his "remaining delinquency." (Doc. 33-1, p. 1). If Mr. McWhorter qualified, then GMAC would send Mr. McWhorter a proposed loan modification agreement including his new interest rate and mortgage payment amount and instructions for how to move ahead with that new plan. (Doc. 33-1, p. 10). Thus, the Trial Period Plan Agreement is not "a brand new payment plan" granting Mr. McWhorter a "fresh start," *see Bailey*, 154 F.3d at 387, because the trial agreement did not include the terms for a new payment plan to satisfy Mr. McWhorter's original loan. Further, the trial agreement states that "[i]t is expressly understood and agreed that the default is not cured or waived by acceptance of any monies paid hereunder." (Doc. 33-1, p. 3). Thus, the Trial Period Plan Agreement by its unambiguous terms did not supersede the original loan agreement or affect Mr. McWhorter's default status under the original agreement. Thus, the loan was still in default when Ocwen acquired it, and Ocwen is a debt collector under the FDCPA with respect to Mr. McWhorter's loan.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Ocwen's motion to dismiss the plaintiffs' amended complaint with respect to Mr. McWhorter (Doc. 9). Further, the Court **DENIES** Ocwen's motion for leave to file a response to Mr. McWhorter's evidentiary submission (Doc. 35).

The parties shall confer and file a Rule 26(f) Report within 30 days of the date of this order.

**DONE** and **ORDERED** this September 28, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE