FILED
2018 Jun-11  PM 06:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HAROLD MCWHORTER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.:  2:15-CV-01831-MHH |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
STIPULATION OF SETTLEMENT AND RELEASE, CONDITIONALLY
CERTIFYING A CLASS FOR SETTLEMENT PURPOSES, DIRECTING
THE ISSUANCE OF CLAS NOTICE, AND SCHEDULING A FINAL
APPROVAL HEARING**

---

## INTRODUCTION

Plaintiffs Harold McWhorter and Robert Fielder (collectively, "Plaintiffs") respectfully move the Court to enter preliminary approval of a proposed class action settlement reached with Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant").[1]   The Settlement—reached after significant litigation and a protracted, five-month mediation—resolves claims that Ocwen unlawfully charged borrowers a fee for making loan payments by telephone, through an interactive voice response telephone system ("IVR"), or through the internet ("Convenience Fees") in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) ("FDCPA"), because such Convenience Fees were not expressly authorized by the borrowers' underlying loan documents.

The Settlement represents an exceptional result for the proposed Settlement Class.  Ocwen has agreed to create a Settlement Fund with an aggregate value of $9,700,000, which will be used to compensate Settlement Class Members for the disputed extra fees that they paid.  Following payment of Attorneys' Fees and Expenses and any Service Awards to Plaintiffs that the Court may award, every Settlement Class Member will be paid an individual allocation from the Settlement

---

[1] A copy of the Stipulation of Settlement and Release ("Settlement" or "Agreement") is attached as Exhibit 1.  Plaintiffs employ certain capitalized words and phrases in this motion that are defined in Section 2 of the Parties' proposed Settlement.

Fund, calculated on a loan-by-loan basis that is equal to the proportion of the Convenience Fees paid by the Settlement Class Member on his or her Class Loans and retained by Ocwen as compared to the total Convenience Fees paid to and retained by Ocwen by the Settlement Class as a whole.  In addition to this monetary component, the Settlement also includes injunctive relief.  Specifically, the Settlement provides for a global amendment of the loan documents of Settlement Class Members to expressly authorize Convenience Fees up to a capped maximum for optional methods of payment not otherwise provided for in their loan documents. This Settlement compares favorably with settlements in similar FDCPA cases, and, as set forth below, is fair, reasonable, and adequate, and well within the range of approval.

Consequently, Plaintiffs respectfully request that the Court enter an order (1) conditionally certifying the proposed Settlement Class for purposes of settlement only, (2) naming Mr. McWhorter and Mr. Fielder as the class representatives, (3) appointing D. Frank Davis, John E. Norris, and Wesley W. Barnett of the law firm of Davis & Norris LLP as Class Counsel, (4) granting preliminary approval of the Settlement, (5) approving the proposed notice plan, and (6) scheduling a final Fairness Hearing.

## BACKGROUND AND PROCEDURAL HISTORY

Ocwen is a mortgage servicing company and, as a mortgage servicer, Ocwen

collects and processes borrowers' loan payments. This case stems from Ocwen's alleged practice of collecting fees from borrowers who made mortgage payments to Ocwen by telephone, IVR, or the internet. (Doc. 2 ¶¶ 9, 11.) During the period at issue in this lawsuit, Ocwen used Western Union's "Speedpay™" service to facilitate these kinds of payments, so the Convenience Fees charged by Ocwen were often referred to as "Speedpay fees." Plaintiffs contend that such fees were unlawful because they were not expressly authorized by the Settlement Class Members' underlying loan documents. Generally, however, these Convenience Fees were less than the late fees Ocwen contractually could have charged borrowers if their payments were made outside of their loans' respective grace periods. (Docs. 9-4, 9-6 (see late charge provisions)). Before imposing a Convenience Fee to accept payment by telephone, IVR, of the internet, Ocwen disclosed the amount and avoidable nature of the Convenience Fees, and obtained consent from the borrower to the assessment of the Convenience Fee.

Plaintiffs McWhorter and Fielder have home loan mortgages that were serviced by Ocwen. (Doc. 2 ¶¶ 7–8.) Mr. Fielder's loan was in default when Ocwen acquired servicing rights to it. (*Id.* ¶ 8; Doc. 31 at 3.) At the time that Ocwen acquired servicing rights to Mr. McWhorter's loan, Mr. McWhorter had completed a "Trial Period Plan Agreement" and was thus eligible for a permanent loan modification that would cure any default on Mr. McWhorter's loan. (Doc. 36 at 4–5.) However, Ocwen acquired servicing rights to Mr. McWhorter's loan before the permanent loan modification agreement was

executed. (*Id.*) As a result, the Court determined that Mr. McWhorter was in default at the time that Ocwen acquired its servicing rights. (*Id.* at 5, 7–8.)

On a few occasions, Plaintiffs made payments on their mortgage loans to Ocwen by telephone, IVR, or the internet, even though their underlying loan documents did not allow them to do so. Plaintiffs made these payments through Western Union's Speedpay service. (Doc. 2 ¶¶ 8–10.) During the time period relevant to this action, Mr. McWhorter paid a total of $19.50, and Mr. Fielder paid a total of $91.50, in Convenience Fees, a portion of which was retained by Ocwen. To make these payments, Plaintiffs received disclosures concerning the amount and avoidable nature of the Convenience Fees; consented to, were charged, and paid the Convenience Fees. (Doc. 31 at 3–4.)

This action was initiated on October 30, 2014 against another defendant. On December 5, 2014, Ocwen was first added as a defendant, and the claims against Ocwen were then severed into this separate action on October 19, 2015. (Doc. 1.) In the operative complaint, Plaintiffs allege that Ocwen violated the FDCPA by charging Convenience Fees to borrowers that were not expressly authorized by the terms of their underlying loan documents. (Doc. 2 ¶¶ 21–22.) Plaintiffs purport to assert their claims on behalf of a putative class of other individuals who paid Convenience Fees to Ocwen on or after December 5, 2013.

Ocwen moved to dismiss the claims asserted in the operative complaint by arguing, among other things, that all customers who were charged a Convenience

Fee (a) were informed in advance that such fees were optional and avoidable, and would result in a disclosed charge amount, and (b) were required to expressly consent to the Convenience Fee before it was charged, such that under both the plain language of the FDCPA and regulatory guidance issued by the Federal Trade Commission there was no FDCPA violation because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. Ocwen's motion to dismiss the action was ultimately denied by the Court in orders entered on August 3, 2017 and September 28, 2017. (Docs. 31, 36.) Ocwen then filed an answer to Plaintiffs' operative complaint, expressly denying the allegations therein. (Doc. 32).

Recognizing that different courts had reached different conclusions on the merits of the claims presented, and given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate the dispute. A 60-day stay pending mediation was entered by the Court on October 23, 2017 (Doc. 39), and as mediation progressed and continued, the stay was extended by the Court (Docs. 41, 43, 45, 47).

Ultimately, the Parties engaged in a protracted five (5) month mediation to reach an amicable resolution of the claims and defenses at issue in this Action. Those efforts included three separate in-person mediation sessions held on

November 30, 2017, February 13, 2018, and March 21, 2018—all of which were conducted and overseen by independent mediator Marty Van Tassel of Upchurch Watson White & Max, with ongoing telephone mediation discussions between those dates. The mediation process included continuing exchanges by the Parties of informal discovery and confirmatory due diligence information and data concerning Ocwen's procedures for acceptance of loan payments made by telephone, IVR or the internet; Ocwen's policies and procedures for authorization and collection of Convenience Fees associated with loan payments made by such means; various data regarding each of the Plaintiffs; and the total volume and dollar amount of Convenience Fees collected during the relevant time period from borrowers whose Class Loans were serviced but not owned by Ocwen and as to which Ocwen acquired servicing rights when those Class Loans were 30 days or more delinquent in their payment obligations (*see generally* Docs. 38, 40, 42).[2]

Through their arms'-length negotiations and mediation efforts, the Parties were able to reach an agreement in principle on the key terms of relief to the Settlement Class. Negotiations over Attorneys' Fees and Expenses and Service

---

[2] The FDCPA does not regulate the servicing of all loans, but does apply to those loans that a servicer acquires servicing rights to at a point in time that the loan is in default. 15 U.S.C. § 1692a(6); *accord Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309 (11th Cir. 2015). A home mortgage loan is generally considered to be in default "30 days after … the first failure to make a monthly payment that subsequent payments by the mortgagor are insufficient to cover when applied to the overdue monthly payments in the order in which they became due." 24 C.F.R. § 203.331.

Awards then ensued.  As a result of the ongoing mediation and those subsequent fee-related negotiations, and based upon their own respective independent investigations and evaluations of the facts and law relating to all of the matters alleged in the pleadings, the Parties entered into a "Term Sheet Reflecting Mediation Agreement in Principle for Settlement" on April 12, 2018.  Thereafter, the Parties engaged in further negotiation of all details of this Settlement, along with further information and due diligence exchanges (*see generally* Doc. 46).

## THE TERMS OF THE SETTLEMENT AGREEMENT

The key terms of the Settlement are briefly summarized below:

## I.    Proposed Settlement Class

The Settlement defines the Settlement Class as:

> [A]ll borrowers on home mortgage loans that were not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, who, during the period from December 5, 2013 through and including June 1, 2018, paid a Convenience Fee to Ocwen for making a loan payment by telephone, IVR, or the internet.

(Settlement ¶ 2.1.30.)  Excluded from the Settlement Class are: (i) Ocwen's board members and executive level officers; (ii) persons who timely and properly exclude themselves from the Settlement Class as provided in Section 6 of the Settlement; and (iii) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.  (*Id*.)  Based on informal discovery and confirmatory investigation, there are 250,194 potential Settlement

7

Class Members on the 182,832 Class Loans at issue in this Action.  (*See* Declaration of John D. Meyer (Doc. 48-1, "Meyer Decl.") at ¶¶ 5–6.)

## II.    Relief for Settlement Class Members

Ocwen has agreed to create a $9,700,000 Settlement Fund which, after the Settlement becomes final, will be used first to pay any Court-awarded Attorneys' Fees and Expenses to Class Counsel and Service Awards to the Plaintiffs.  (Settlement ¶ 2.1.32.)  Following the payment of any such Attorneys' Fees and Expenses and Service Awards, the remaining balance of the Settlement Fund will be divided and distributed among Plaintiffs and the Settlement Class Members (the "Individual Allocations").

Individual Allocations will be calculated on a loan-by-loan basis, not on a borrower-by-borrower basis.  Each Class Loan will receive an Individual Allocation from the remainder of the Settlement Fund based on the proportion of Convenience Fees paid to and retained by Ocwen on that Class Loan between December 5, 2013 and June 1, 2018, inclusive, as compared to the total of all Convenience Fees paid to and retained by Ocwen on all Class Loans combined during that same period.  In other words, and by way of illustration, if the Convenience Fee charges paid to and retained by Ocwen between December 5, 2013 and June 1, 2018 with respect to a given class loan equal 1% of the total Convenience Fee charges paid to and retained by Ocwen during that period with respect to every Class Loan (excluding the loans

of those who opt out), then the Settlement Class Members holding that Class Loan would jointly receive an Individual Allocation equal to 1% of the remainder of the Settlement Fund following the payment of any Court-awarded Attorneys' Fees and Expenses and Service Awards from the Settlement Fund. Each Class Loan will be entitled to only one Individual Allocation. Co-borrowers, joint-borrowers and multiple borrowers on a single Class Loan are not each entitled to receive separate Individual Allocations on the same Class Loan. (Settlement ¶ 4.5.)

How Individual Allocations will be paid out to Settlement Class Members depends on whether Ocwen is still servicing the Class Loan at the time Individual Allocations are distributed. If Ocwen is still servicing a Class Loan at the time of distribution, the Individual Allocation will be distributed to the Settlement Class Member(s) holding that loan in the form of a credit to reduce the unpaid principal balance of the loan. (Settlement ¶ 4.6.) If the Class Loan is no longer being serviced by Ocwen, then a check for the Individual Allocation will be mailed to the Settlement Class Member(s) holding the loan at the mailing address of record for the Class Loan as determined by Ocwen's records. (*Id.*) The check will be made payable jointly to all borrowers of record on the Class Loan. (*Id.*) All such checks will state on their face that they will expire and become stale, null and void unless cashed within one hundred and twenty (120) days after the date of issuance of the check. (*Id.* ¶ 4.7). A Settlement Class Member's failure to cash such a check within 120 days will constitute a waiver of her right to receive such

relief, and unclaimed funds will then be aggregated and paid to a designated *cy pres* recipient.  (*Id.*)[3]

## III.    Release and Settlement Consideration for Ocwen

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Plaintiffs and the Settlement Class will release Ocwen and certain of its related and affiliated entities (the "Released Parties," as described in Paragraph 2.1.27 of the Settlement) of, among other things, all claims that relate to or arise out of Convenience Fees charged by Ocwen to Settlement Class Members between December 5, 2013 and June 1, 2018 for making loan payments by telephone, IVR, and the internet, and other payment methods.  (Settlement ¶ 8.1.)  In other words, the Settlement contemplates a release specific to the subject matter addressed in this Action, and does not contemplate a general release of any and all claims of any kind against Ocwen.

Moreover, as additional consideration for the Settlement Fund and other promises and covenants in the Settlement, Plaintiffs and each Settlement Class Member shall further

---

[3] Clearly, "[i]t does not follow as a matter of course that money must be paid to make every settlement a reasonable one."  *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449, 453 (N.D. Ala. 1974), *aff'd.*, 511 F.2d 1400 (5th Cir. 1975).  In fact, Individual Allocation relief in the form of credits is likely the preferable form of relief here, as such relief will reduce the balances of Settlement Class Members' Class Loans, which lie at the core of this Action.  *In re Lloyd's Am. Trust Fund Litig.*, 96-cv-1262, 2002 WL 31663577, at *16 (S.D.N.Y. Nov. 26, 2002) (collecting cases, and noting "courts often approve class action settlements that employ debt forgiveness and other non-cash benefits as all or part of the settlement consideration."), *aff'd.*, 2003 WL 21982207 (2d Cir. Aug. 20, 2003).

be deemed to have agreed that their loan documents serviced by Ocwen shall be deemed amended, by virtue of the Settlement Agreement and effective as of June 1, 2018 to include the following language to expressly authorize the assessment of Convenience Fees:

1. Borrower(s) acknowledge(s) the Lender, or a servicing agent collecting payments under the Note, may in its discretion, choose to accept payments made through means not specifically provided for in the Note.

2. Borrower(s) acknowledge(s) and agree(s) the Lender, or a servicing agent collecting payments under the Note, may charge Borrower(s) fees of up to (and not exceeding) $19.50 per payment for the use of any payment methods not specifically provided for by the Note, and such fees are not limited to and are not represented to be limited to the costs of processing such payments or making such payment methods available.

3. Borrower(s) hereby agree(s) such fees may include, but are not limited to, fees, charges, and expenses related to payments made over the telephone with the assistance of a representative, payments made through an automated telephone system, payments made online, and other payment methods not expressly provided for by the Note.

4. Borrower(s) acknowledge(s) and agree(s) that if and to the extent the personal liability of a Borrower under the Note has been discharged in bankruptcy prior to the effective date of this Amendment, then such Borrower has no personal obligation to repay the debt associated with the Note, this Amendment to the Note does not reimpose or revive any discharged personal liability with respect to the Note, and this Amendment will not to be construed as a waiver of Borrower(s)' discharge or an attempt to collect against the Borrower(s) personally. With respect to any such discharged personal liability, Lender's sole recourse is the enforcement— subject to applicable law—of Lender's security interest in the property described in the mortgage, and any payments made by Borrower(s), including any fees for the use of any payment methods

11

not specifically provided for by the Note, are voluntary and not the result of any demand for payment of discharged debt.

5. Borrower(s) acknowledge(s) and agree(s) that if and to the extent Borrower(s) is (are) in an active bankruptcy case, this Amendment and any payments made by Borrower(s), including any fees for the use of any payment methods not specifically provided for by the Note, are subject to applicable bankruptcy law and applicable bankruptcy court orders, and Lender is not making a demand herein for any payment from any such Borrower(s).

(Settlement ¶ 8.6.)  To place this in context, it should be noted that, subject to any applicable state law limitations, Ocwen currently charges convenience fees of $19.50 for payments by phone with the assistant of a live agent; $10.00 for certain online payments; and $12.00 for payments made through IVR.

Moreover, if for any reason the foregoing is deemed ineffective to expressly authorize such Convenience Fees for purposes of any state or federal statute, law or regulation, then upon request by Ocwen, Plaintiffs and each such Settlement Class Member have agreed to execute any and all documents as may be sufficient or necessary to authorize such Convenience Fees under such statute, law or regulation, and such documents shall be effective as of June 1, 2018.

Finally, Ocwen has agreed that in each payment transaction involving a Convenience Fee following the Final Settlement Date, Ocwen shall use its best efforts to cause its customer service representatives, telephone systems, scripts or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by

law:

    a.    the exact fee to be charged for the payment method chosen by the borrower;

    b.    the fact that the fee may include an amount retained by Ocwen in excess of its costs;

    c.    the fact that the borrower is not required to use the payment method for which a fee is being charged;

    d.    the payment methods for which Ocwen does not charge a fee;

    e.    any other optional payment methods accepted by Ocwen that involve a lower fee; and

    f.    when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

(Settlement ¶ 8.6.)

## IV.    Notice and Settlement Administration

The Parties have agreed to the appointment of Class-Settlement.com to act as the Settlement Administrator and to, among other things, provide notice to the proposed Settlement Class. (Settlement ¶ 2.1.29.) The costs of distributing notice and for Settlement Administration are to be paid separately by Ocwen, outside of, and in addition to, the Settlement Fund being offered to Settlement Class Members. (*Id.* ¶ 4.8.)

Notice will be distributed to the Settlement Class by U.S. First-Class Mail, based on address information contained in Ocwen's business records. (Settlement ¶¶ 5.2.1, 5.2.2). Under the Settlement, notice will be distributed within twenty-one (21) days after entry of a Preliminary Approval Order (*Id*. ¶ 5.2.2), and Settlement

Class Members will then have more than ninety (90) days to decide to remain in the Settlement Class, or opt out of it, or object to the Settlement.[4]

## V.    Opt-Out Provisions

The Settlement allows any Settlement Class Members to opt-out of the Settlement and the Settlement Class. (Settlement at ¶¶ 6.1 – 6.4). Any Settlement Class Member who wishes to seek exclusion from the Settlement Class will be advised of his or her right to be excluded, and of the deadline and procedures for exercising that right. (*Id.* at ¶ 5.2.3.3; *see also id.* at Ex. A). As noted above, the timetable proposed by the Settlement will afford members of the Settlement Class with over 90 days within which to decide whether to remain in the Settlement Class, or to seek exclusion from it. Those who wish to pursue actual damages or higher individual statutory damages can do so by opting out, and this is a meaningful opportunity since the FDCPA allows successful plaintiffs the right to recover costs and their reasonable attorneys' fees. 15 U.S.C. § 1692k(a)(3).

---

[4] The Settlement Agreement provides that the deadline for Settlement Class Members to exclude themselves from or object to the Settlement will be thirty-five (35) days before the Fairness Hearing (Settlement ¶ 2.1.16), and that the Fairness Hearing should not be held "earlier than one hundred and fifty (150) days after the date of entry of the Preliminary Approval Order." (*Id.* at ¶ 2.1.11.) As a result, Settlement Class Members will be afforded at least ninety-four (94) days within which to request exclusion from the Settlement Class or object to the Settlement (*i.e.*, 150 days – 35 day objection/opt out deadline = 115 days from entry of Preliminary Approval Order; 115 days – 21 days to distribute notice following entry of Preliminary Approval Order = 94 day response period).

14

## VI.    Class Representative Service Awards

Under the Settlement, Class Counsel have reserved the right to seek a Service Awards for Plaintiffs for their service as the named representatives of the Settlement Class.  (Settlement ¶ 9.3.)  Any Service Awards approved by the Court will be paid from the Settlement Fund.  (*Id.*)  The purpose of the Service Awards is to compensate Plaintiffs for their respective efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members, and achieving the benefits of this Agreement on behalf of the Settlement Class.  Ocwen reserves the right to oppose any petition by Plaintiffs and Class Counsel for Service Awards that Ocwen deems to be unreasonable in nature or amount or otherwise objectionable.  (*Id.*)  The Settlement is not conditioned upon the Court approving any Service Awards to Plaintiffs.  (*Id.* ¶ 9.6).

## VII.   Attorneys' Fees and Expenses

Under the Settlement, Class Counsel have also reserved the right to petition the Court for an award of Attorneys' Fees and Expenses, to be paid from the Settlement Fund.  (Settlement ¶ 9.1.)  Class Counsel will file with the Court their request for Attorneys' Fees and Expenses no later than fourteen (14) days before the Objection/Exclusion Deadline, which will then be posted on the Settlement Website for review by the Settlement Class Members.  Ocwen reserves the right to oppose any request for Attorneys' Fees and Expenses that Ocwen deems to be unreasonable in nature or

amount or otherwise objectionable.  (*Id.*)  The Settlement is not conditioned on the Court approving any specific amount of Attorneys' Fees and Expenses.  (*Id.* ¶ 9.6.)

## ARGUMENT

### I.     The proposed Settlement Class should be certified.

Before granting preliminary approval, the Court must first determine that the proposed class is appropriate for certification.  To do so, the proposed class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *See Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633 (2004).  The Court must also be satisfied that the proposed class "is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

Rule 23(a) requires that a plaintiff demonstrate that (1) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) there are questions of law or fact common to the proposed class (commonality), (3) the claims of the plaintiff are typical of those of the class (typicality), and (4) the plaintiff will adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a)(1)–(4).  In addition, where, as here, Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate that the common questions predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy (superiority).   Fed. R. Civ. P. 23(b)(3).  Because the proposed class is being certified for settlement purposes, the Court "need not consider manageability issues that might be presented in this case." *Jones v. United Healthcare Servs., Inc.*, No. 15-cv-61144, 2016 WL 8738256, at *1 (S.D. Fla. Sept. 22, 2016) (citing *Amchem*, 521 U.S. at 620).

As explained below, the requirements of Rule 23 are met here.  Just as other courts have certified settlement classes of consumers alleging lenders charged unlawful collection fees, this Court should do the same here.  *See, e.g.*, *Babcock v. C. Tech Collections, Inc.*, No. 1:14-cv-3124, 2017 WL 1155767 (E.D.N.Y. Nov. 27, 2017).

### A.   The proposed Settlement Class is ascertainable.

A class is ascertainable if "the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way," such that identifying class members will be "a manageable process that does not require much, if any, individual inquiry."  *Karhu v. Vital Pharm., Inc*., 621 F. App'x 945, 946 (11th Cir. 2015).  Here, the proposed definition of the Settlement Class is based on objective criteria, all of which are determinable from Ocwen's business records. (*See* Meyer Decl. at ¶¶ 4–5.)  Individual, subjective inquiries to identify who may be a member of the Settlement Class are unnecessary.  *See Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016) (proposed class was ascertainable

where membership in the class was based on objective criteria and the defendant's data could be used to easily identify the putative class members).

**B.     The proposed Settlement Class meets the requirements of Rule 23(a).**

The proposed Settlement Class satisfies each element of Rule 23(a): numerosity, commonality, typicality, and adequacy.

### 1.     The proposed Settlement Class is sufficiently numerous.

The first prerequisite to class certification under Rule 23(a)—numerosity—requires that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  There is no specific minimum number of proposed class members required to satisfy the numerosity requirement, but generally a class of forty or more members is considered sufficient.  *See Cox v. Am. Cast Iron Pip Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.").

Here, based on information provided by Ocwen, there are 250,194 Settlement Class Members that paid their mortgages to Ocwen and were charged Convenience Fees.  (Meyer Decl. ¶¶ 5–6.)  Accordingly, the proposed Settlement Class is so numerous that joinder of their claims is impracticable.  The numerosity requirement is easily satisfied.

18

**2.    Settlement Class Members' claims share common questions of law and fact.**

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively, and is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted). The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350; *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members" (internal citations omitted)).

Even where the circumstances of each particular class member vary, commonality is met "[w]here the complaint alleges that the Defendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). "[I]t is not necessary that members of the proposed class share every fact in common," *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (internal quotations omitted), so long as there is a "common nucleus of operative fact[]."

19

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Here, every key issue in this litigation stems from Ocwen's alleged uniform course of conduct: charging Settlement Class Members Convenience Fees to make their mortgage payments by telephone, IVR, or the internet. *See, e.g.*, *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 515 (S.D. Fla. 2013) (concluding FDCPA class satisfied Rule 23's commonality requirement because class was uniformly charged a disputed fee). The issues raised in this action that are common to each Settlement Class Member include, among other things: (a) whether Ocwen imposed and collected from Settlement Class Members Convenience Fees not expressly permitted by the terms of their respective loan documents; and (b) whether the Settlement Class Members are entitled to damages under Section 1692k of the FDCPA as a result of Ocwen's alleged conduct.

These common questions—whose answers depend solely on Ocwen's alleged common course of conduct—establish commonality. *See, e.g.*, *Muzuco*, 297 F.R.D. at 515; *accord Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 291 (M.D. Ga. 2016) (commonality satisfied in FDCPA class action where class members were subjected to a common course of conduct by the defendant); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 615-16 (S.D. Fla. 2009) (same). At the heart of this case is Ocwen's alleged strategy of charging Convenience Fees to Settlement Class Members. This litigation will resolve all claims stemming from

that strategy in a single stroke.  Rule 23(a)'s commonality requirement is therefore satisfied.

### 3. Plaintiffs' claims are typical of the Settlement Class Members' claims.

Rule 23(a)'s next requirement—typicality—requires that the class representative's claims be typical of those of the putative class that she seeks to represent.  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement is to assure that the interest of the named representative aligns with the interests of the class.  *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).

The test of typicality is "whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct."  *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 641 (S.D. Fla. 2015) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class," *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 698 (N.D. Ga. 1991), so long as the claims or defenses of the class and class representatives "arise from the same events, practice, or conduct and are based on the same legal theories," *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1306 (N.D. Fla. 2017)

(citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Typicality is met here.  Plaintiffs are in a position identical to every other member of the proposed Settlement Class.  The Court has concluded that both Plaintiffs have standing (Docs. 31, 36), and both Plaintiffs have suffered the same type of alleged injury as every other Settlement Class Member by being charged Convenience Fees when paying their mortgage payments by telephone, IVR, or the internet.  Their claims are also all based on the same legal theories as the claims of the other Settlement Class Members—that charging Convenience Fees that are not expressly authorized by a borrowers' underlying loan documents violates the FDCPA (for borrowers to whom the FDCPA applies).  Accordingly, the Plaintiffs have the same interest as every other Settlement Class Member in obtaining all available relief for Ocwen's alleged violations.  The typicality requirement is satisfied.  *See, e.g.*, *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 539 (N.D. Ala. 2001) ("Typicality is satisfied where the claims of the class representatives arise from the same broad course of conduct [as] the other class members and are based on the same legal theory."); *accord Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 501-11 (N.D. Cal. 2007) (concluding FDCPA class satisfied Rule 23's typicality requirement because common claim was that defendant had had attempted to collect improper fees and charges from class members); *O'Dell v. Nat'l Recovery*

*Agency*, 291 F. Supp. 3d 687, 698-99 (E.D. Pa. 2018) (certifying FDCPA class after finding that the claims of the named plaintiff and putative class members were typical, in that the common allegation was that defendant had improperly re-aged the accounts of the class).

### 4.   Plaintiffs and Class Counsel will adequately represent the Settlement Class.

Rule 23(a)'s final requirement—adequacy—requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (internal citations omitted).  Although generally, a class representative must have a "working knowledge" of the case, *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012), "it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action," *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 317–18 (S.D. Fla. 1998).  Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that the interests of the class remain adequately protected. *See Dukes*, 564 U.S. at 349 n.5

23

(discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of the class).

Here, both Plaintiffs clearly meet the requirements to be named class representatives.  First, as discussed above, they share the same interest in securing relief for the claims at issue as every other member of the proposed Settlement Class, and there is no evidence of any conflict of interest.  Next, Plaintiffs have demonstrated their willingness to vigorously prosecute this case.  They have regularly assisted Class Counsel throughout the case.  Their efforts have produced this Settlement. (*See* Declaration of John E. Norris (Exhibit 2 hereto, "Norris Decl.") at ¶ 11.)  Plaintiffs have thus demonstrated that they will fairly and adequately protect the Settlement Class's interests.  *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651–52 (S.D. Fla. 2010) (finding lead plaintiffs to be adequate where, as here, they "do not have any apparent substantial conflicts of interest with potential class members" and "they are actively participating in th[e] litigation").

Similarly, proposed Class Counsel has and will continue to adequately protect the interest of the proposed Settlement Class.  *Dahlgren's Nursery, Inc. v. E.I. du Pont de Nemours & Co.*, No. 91-cv-8709, 1994 WL 1251231, at *6–7 (S.D. Fla. Oct. 30, 1994) (counsel will be deemed adequate if they are qualified, adequately financed, and possess sufficient experience in the subject matter of the class action).

Class Counsel are well-financed, well-qualified, and experienced members of the plaintiffs' bar who have extensive experience in class actions of similar size, scope, and complexity to this case. (Norris Decl. ¶ 3-9.) Class Counsel have frequently been appointed lead class counsel by courts throughout the country and have the resources necessary to conduct litigation of this nature. (*Id.* ¶ 7); *see also, e.g.*, *Faught v. Am. Home Shield Corp.*, No. 2:07-cv-1928, 2009 WL 10263452, at *3 (N.D. Ala. Oct. 30, 2009), *aff'd* 668 F.3d 1233 (11th Cir. 2011) (appointing Davis & Norris LLP as class counsel in a class action). Moreover, Class Counsel have already diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency. (Norris Decl. ¶ 12); *City of St. Petersburg*, 265 F.R.D. at 651 (finding class counsel to be adequate where, as here, they were "well-qualified to prosecute th[e] action … and have demonstrated skill in pursuing th[e] litigation"). Thus, Rule 23(a)'s adequacy requirement is met.

### C.    The proposed Settlement Class meets the requirements of Rule 23(b).

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed class must also satisfy Rule 23(b)(3)'s additional requirements— predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). As detailed below, both predominance and superiority requirements of Rule 23(b)(3) are satisfied.

### 1.     Common questions of law and fact predominate.

While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether those common issues predominate over "issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Rule 23(b)(3)'s predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Here, as detailed above, the elements of the Settlement Class Members' claims present common factual and legal questions, including (a) whether Ocwen imposed and collected from Settlement Class Members Convenience Fees not expressly permitted by the terms of their respective loan documents; and (b) whether the Settlement Class Members are entitled to damages under Section 1692k of the FDCPA as a result of Ocwen's alleged conduct. Each of these common questions can be resolved in a single stroke for all members of the proposed Settlement Class.[5]

---

[5] One potential individual question, besides the amount of damages, is whether any Settlement Class Member's loan documentation authorized the Convenience Fees. There is no evidence, however, that any Settlement Class Member's loan documentation so authorized Convenience Fees, and, as a result, this potential individualized issue cannot overcome predominance. *See Agne*

As a result, common issues of law and fact predominate over any individualized issues. *See, e.g.*, *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 418-19 (W.D.N.Y. 2013) (common issues surrounding claim that defendant violated FDCPA by attempting to collect an improper charge predominated over any individual issues in case); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 75-76 (N.D. Ill. 2016) (predominance satisfied in FDCPA class action alleging that defendant attempted to collect from class members an improper percentage-based collection fee).

### 2.   A class action is the superior method of resolving the controversy.

Finally, certification of this suit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the Settlement Class. To meet the superiority requirement, a plaintiff must show that a class action is superior to other available methods for the fair and efficient adjudication of the [controversy]." *Busby*, 513 F.3d at 1326. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly*

---

*v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 568, 570 (W.D. Wash. 2012) (the identification of potential individualized issues, unsupported by evidence, is insufficient to rebut plaintiff's showing that the predominance requirement was met).

*v. Sabretech Inc.*, 195 F.R.D. 48, 51 (S.D. Fla. 1999).  Because Plaintiffs seek class certification for settlement purposes, the Court need not inquire into whether this action, if tried, would present intractable management problems.  *Amchem*, 521 U.S. at 620; *Carriuolo*, 823 F.3d at 988; *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[M]anageability concerns do not stand in the way of certifying a settlement class.").

Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification. *Hicks v. Client Servs.*, 257 F.R.D. 699, 700 (S.D. Fla. 2009).  Similarly, in determining superiority, the Court should consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."  *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Here, individual damages are small compared to the cost of litigation.  Indeed, individual actual damages for any given Settlement Class Member may be "in the few hundred dollar range" or less, with statutory damages of just "a thousand dollars;" as such, "[i]ndividual class members do not have a great interest in controlling the prosecution of separate actions."  *Dibb v. AllianceOne Receivables Mgmt., Inc.*, No. C14-5835-RJB, 2015 WL 8970778, at *13 (W.D. Wash. Dec. 16, 2015) (finding superiority met for FDCPA class action); *see also Roundtree v. Bush*

*Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015) (certifying class "given the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually").

Instead of repeating identical trials with the same evidence and arguments for each one of the 250,194 members of the proposed Settlement Class, through 182,832 individual proceedings with respect to each Class Loan, and accruing the costs and judicial inefficiencies that would come with them, all of the Settlement Class Members' claims can and should be resolved in a single action.

Accordingly, a class action is the superior method for adjudicating the controversy between the Parties, and as all requirements of class certification under Rule 23 are met, the proposed class should be certified.

## II.    Plaintiff's counsel should be appointed Class Counsel.

The parties seek the appointment of D. Frank Davis, John E. Norris, and Wesley W. Barnett of the law firm of Davis & Norris LLP as Class Counsel.  The partners and attorneys of Davis & Norris, LLP have devoted a collective seventy-plus years of practicing law in class action and mass tort litigation.  (Norris Dec. ¶ 6).  John Norris, as one example, has been practicing law for more than twenty-five

years and has extensive experience in complex and class action litigation throughout the country, representing both plaintiffs and defendants during his career.  (Norris Dec. ¶ 6).  The firm and its lawyers have represented both class action plaintiffs and defendants, have settled class actions, and have tried class actions across the country. Firm attorneys are members of the bars of Florida, Alabama, North Carolina, and Tennessee. Davis & Norris, LLP attorneys are additionally admitted to practice in the United States Supreme Court, the Fifth, Sixth, Ninth, and Eleventh Circuit Courts of Appeals, and countless District Courts throughout the Country.  (Id.).

Some of the class action and mass torts where Davis & Norris, LLP attorneys were either lead counsel or co-lead counsel include:

a.  Williams v. America Online, Inc.: Lead counsel for the defendant in a national consumer class action over purported false statements about a service.

b.  Leonard v. National Rent-A-Car: Lead counsel for the defendant in a national consumer class action involving purported false statements about a service.

c.  Hammack v. Quaker State Corporation: Lead counsel for the plaintiffs in a case of purported false statements about a product. The case of consumers was certified as a national class action and concluded with a multi-million-dollar settlement.

d.  Singleton v. Splitfire, Inc.: Lead counsel for the Plaintiffs. The case involved purported false statements about a product. It was certified as a national consumer class action and concluded with a multi-million-dollar settlement.

e.  Wilson v. Dahberg: Lead counsel for the Plaintiffs. The case concerned alleged false statements about a product. It was

certified as a national consumer class action and concluded with a multi-million-dollar settlement.

f.   <u>Dyer v. Monsanto, et al.</u>: Lead counsel for plaintiff property owners in a class action for damages arising from the pollution of a lake by PCBs. The case settled for $43 million.

g.   <u>Tolbert v. Monsanto, et al.</u>: Co-lead counsel for approximately 18,000 plaintiffs for damages to persons and property from PCBs manufactured by Defendant. The case combined cases settled for more than $600 million.

h.   <u>Aaron v. Chicago Housing Authority, et al.</u>: Lead counsel for plaintiff class action until we left our prior firm in January of 2003. The case settled shortly afterward for a multi-million dollar number.

i.   <u>The Vietnam Assoc. for Victims of Agent Orange/Dioxin, et al. v. Dow Chemical Co., et al.</u>: Co-lead counsel for a purported plaintiff class of between 2-4 million Vietnamese nationals and residents of Vietnam who suffered damages as a result of Dioxin exposure during the Vietnam War.

j.   <u>In Re Vioxx Products Liability Litigation</u>, MDL-1657: My firm represented hundreds of clients who were part of the MDL proceedings and subsequent settlement.

k.   <u>Faught v. American Home Shield</u>: Lead counsel in a nationwide consumer class action over claims handling. The case involved approximately 4.3 million consumers. The creative nationwide settlement in this case was affirmed by the Eleventh Circuit Court of Appeals.

l.   <u>Abney v. American Home Shield</u>: Lead counsel in a nationwide consumer class action involving RESPA. This case settled on a nationwide basis.

m.   <u>Robinson, et al. v. T-Mobile USA</u>: Lead counsel in an action related to T-Mobile's practice of reactivating stolen or lost cell phones for use on its network. The case was appealed to the

Eleventh Circuit Court of Appeals and ultimately resulted in an individual settlement on behalf of our clients. T-Mobile changed its practices shortly thereafter.

n.   <u>Veal v. Simply Orange Juice and Minute Maid</u>: Co-Lead counsel in a class action related to the marketing and sales practices of orange juice manufactured and sold by Simply Orange Juce and Minute Maid. The case was transferred to MDL-2361 in the Western District of Missouri. Davis & Norris, LLP was a member of the Plaintiff Executive Committee in the MDL. The case resulted in an individual settlement.

o.   <u>Maturani v. Hyundai</u>: A purported class action filed against Hyundai related to inflated miles per gallon claims. The case was transferred to MDL-2424 in the Central District of California. My firm participated as a non-settling plaintiff is the extensive and exhaustive confirmatory discovery which resulted in a substantially changed finally approved settlement, and were awarded a substantial attorney's fee for our efforts. The settlement is currently on appeal.

p.   <u>Lindblom v. Santander Consumer USA, Inc.</u>, et al.: My firm is lead counsel in a California class action filed in the Eastern District of California under the Rosenthal Fair Debt Collection Practices Act related to fees charged in violation of the law.

q.   <u>Garcia v. Nationstar</u>, et al.: My firm is Co-lead counsel in a Washington nationwide class action filed in the Western District of Washington under the Fair Debt Collection Practices Act related to fees charged in violation of the law. The case is before the Court on a motion for preliminary approval of a class settlement. (Norris Dec. ¶ 7).

Davis & Norris, LLP, has been recognized by federal courts by appointment in leadership roles including its appointment as a member of the executive committee in the MDL-2361 now pending in the United States District Court for the

Western District of Missouri against The Coca-Cola Company in <u>In re: Simply</u> <u>Orange Orange Juice Marketing and Sales Practices Litigation</u>, MDL-2361.  (Norris Dec. ¶ 8).

Davis & Norris, LLP, also has substantial experience in prosecuting statutory actions such as cases under the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA"). Davis & Norris, LLP, has filed hundreds of cases and arbitrations seeking statutory claims on behalf of numerous clients.  (Norris Dec. ¶ 9).

The attorneys at Davis & Norris, along with Plaintiffs Harold McWhorter and Robert Fielder, have worked diligently together to procure the proposed settlement. Plaintiffs have fully participated in the prosecution of this case and in the negotiations leading to settlement.  (Norris Dec. ¶ 10).  Mr. McWhorter and Mr. Fielder each have claims identical to the absent proposed class members of being charged convenience fees.   (<u>Id.</u>). Together with their counsel, Plaintiffs McWhorter's and Fielder's time, energy, and effort in this case have resulted in this settlement.  (<u>Id.</u>).

Davis & Norris, as a firm, along with attorneys D. Frank Davis, Wesley W. Barnett, and John E. Norris, have devoted substantial effort and resources to investigating and prosecuting the claims in this action, and will continue to do so throughout its pendency.  (Norris Dec. ¶ 11).

33

In sum, proposed class counsel are experienced litigators in the field of class and other complex litigation, and their efforts, along with their clients', have resulted in this favorable settlement on behalf of the Class.  Accordingly, the Court should appoint them as Class Counsel.

## III.   The proposed Settlement merits preliminary approval.

After determining that a proposed class should be certified, the Court must determine whether the proposed settlement warrants approval.  Fed. R. Civ. P. 23(e).  This is a two-step process: (1) preliminary approval of the settlement and the method and form of class notice; and (2) final approval after notice and a fairness hearing.  *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

At the preliminary approval stage, the Court determines whether (1) the proposed settlement appears to fall within the "range of final approval," such that notice should be disseminated to the class.  *Family Med. Pharm., LLC v. Holdings*, No. 15-cv-0563, 2016 WL 7320885, at *5 (S.D. Ala. Dec. 14, 2016).  Approval of a proposed class action settlement is a matter within the discretion of the Court, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), in recognition that the "evaluation of [a] proposed settlement … requires an amalgamation of delicate balancing, gross approximations and rough justice," *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1385 (S.D.N.Y. 1972).  In exercising its discretion, the Court must be mindful of the "strong judicial policy favoring settlement as well as

by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986.[6]

Where, as here, a settlement agreement is negotiated before adversarial class certification, courts generally look to two guideposts in deciding whether to preliminarily approve the settlement: (1) whether the settlement was procedurally fair, *i.e.*, whether there are any signs of collusion between lead plaintiffs, class counsel, and the defendants, *see Lee v. Ocwen Loan Serv., LLC*, No. 14-cv-60649, 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015), and (2) whether the settlement is substantively fair, *see Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  For the latter inquiry, the settlement need not be the "fairest possible resolution of the claims," *Shy v. Navistar Int'l Corp.*, No. 92-cv-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993), or "the most favorable possible result of litigation," *Lazy Oil Co. v. Wotoco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997).  Instead, a settlement is substantively fair if it is within the "range of reasonableness."  *Id*.

---

[6] *See also, e.g.*, *Wal-Mart Stores, Inc. v. Visa USA, Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting "the strong judicial policy in favor of settlements, particularly in the class action context."); *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 311 (3d Cir. 2011) (there is a "strong presumption in favor of voluntary settlement agreements" which is "especially strong in class actions and other complex cases"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits").

Here, the Court should preliminarily approve the Settlement not only because public policy favors the settlement of complex class actions such as this one, but also because the Settlement offers real and reasonable relief very similar to the remedies available to the Settlement Class if Plaintiffs and Class Counsel were able to successfully obtain certification of a litigation class and then litigate this matter through trial, and maintain a judgment through the appeals process.  At the same time, the Settlement allows every Settlement Class Member who is dissatisfied with the Settlement's terms to exclude himself or herself from the Settlement class to pursue his or her own lawsuit against Ocwen.

## A.    The proposed Settlement is procedurally fair.

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations."  *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  In making this determination, courts begin with a presumption of good faith in the negotiating process.  *Lee*, 2015 WL 5449813, at *11 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").[7]

─────────────────────

[77] *Accord Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016)

36

Here, the record supports the procedural fairness of the proposed Settlement. The Parties were separately represented by able and experienced counsel in complex actions and consumer litigation, and "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. The Parties' negotiations were protracted, continuing over a five-month period during which they engaged in confirmatory due diligence with respect to the claims at issue, the scope and membership of the Settlement Class, and the terms of the proposed Settlement. Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton*, 559 F.2d at 1332, and the Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). On top of that, the Parties' negotiations occurred within the context of mediation conducted by Marty Van Tassel of Upchurch Watson White & Max. (Norris Decl.

---

("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

at ¶ 14.)  The participation of such a respected neutral in the settlement negotiation process should give the Court "confidence that [the negotiations] were conducted in an arm's-length, non-collusive manner."  *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y. 2004).[8]

In addition, there is no evidence suggesting that Plaintiffs or Class Counsel are unfairly benefiting at the expense of the Settlement Class.  Although Plaintiffs and Class Counsel have reserved the right to seek a Service Award and an award of Attorneys' Fees and Expenses from the Settlement Fund, Ocwen and the Settlement Class Members have the right to object to any request for any such awards that they find unreasonable or otherwise objectionable, plus any such award will be subject to Court approval based on established judicial standards.  In addition, the Settlement is not conditioned on the approval of any such awards to Plaintiffs or Class Counsel.

---

[8] *See also Faught v. Am. Home Shield Corp.,* No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr. 27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-length nature of class settlement), *aff'd.*, 688 F.3d 1233 (11th Cir. 2011); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (use of mediator during settlement negotiations "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel"); *In re CIGNA Corp. Sec. Litig.*, No. 02-cv-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (settlement entitled to presumption of fairness where parties' negotiations "were assisted by a retired federal district judge who was privately retained and served as a mediator."); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court appointed special master to oversee mediation efforts evidenced the procedural fairness of the negotiating process); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion …. Parties colluding in a settlement would hardly need the services of a neutral third party to broker their deal.").

(Settlement ¶ 9.6.)   Thus, both the Parties and the Court have the ability to ensure that any service, fee, or expense awards to Plaintiffs or Class Counsel are reasonable, appropriate, and consistent with such awards in comparable cases.  *See Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("[A]ttorneys' fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class.").  There is nothing collusive about Plaintiffs' and Class Counsel's reservation of the right to seek such awards from the Settlement Fund.  *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–37 (2d Cir. 2007) (holding that it was appropriate to award service awards and attorneys' fees to class counsel from the settlement fund recovered for the settlement class members); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–97 (11th Cir. 1999) (affirming fee award based on the total value of the settlement fund).

### B.    The proposed Settlement is substantively fair.

When evaluating the substantive fairness of a class action settlement, the Eleventh Circuit has instructed courts to consider the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Fraught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  Here, the

reaction of class members cannot be known until after the Settlement Class has been notified of the Settlement, so the fifth factor is not applicable. Consideration of the other five factors, however, strongly weighs in favor of preliminary approval.

*First*, consideration of the first ("likelihood of success at trial"), second ("range of possible recovery") and fourth ("anticipated complexity, expense, and duration of litigation") factors strongly favor the Settlement. Although Plaintiffs are confident in the strength of their case and believe that they would ultimately prevail in class certification and at trial, they nonetheless recognize that the risks inherent in further litigation are significant. (Norris Decl. ¶¶ 14–15.)

In particular, there is an immediate risk that Plaintiffs would be unable to maintain the case as a class action. For example, Ocwen likely would argue that whether it can be considered a debt collector is an individualized question that must be determined on a borrower-by-borrower basis, based on each putative class member's status at the time that Ocwen acquired servicing rights to that class member's loan. Ocwen also likely would argue that whether the imposition of Convenience Fees violates the FDCPA depends upon whether such fees were authorized by each borrower's underlying loan documents, which also could require individualized inquiries. Although Plaintiffs dispute that the resolution of either of these issues necessarily will require individualized inquiries, Plaintiffs are aware that the Court could find Ocwen's arguments persuasive and, further, could find that such

individualized issues overwhelm any common ones.

Even if Plaintiffs prevailed at class certification, risks would still be present through the summary judgment stage and at trial as Ocwen contests the merits of the case. Ocwen has indicated that it would raise a number of defenses to Plaintiffs' allegations, including arguing that the Convenience Fees were appropriately charged under borrowers' loan documents and also that the fees were knowingly and voluntarily paid, which would constitute a waiver of claims arising from the payments of such fees. (*See* Doc. 32.) Moreover, this Court and other federal courts in similar cases have reached varying conclusions on whether a "debt collector" may impose an optional, consented-to-in-advance convenience charge on a borrower's payment by telephone, IVR, or the internet, even though such a charge is not expressly authorized by the borrower's loan documents. *Compare Lee v. Main Accounts, Inc.*, No. 96-3922, 1997 WL 618803, at *1 (6th Cir. Oct. 6, 1997) *with Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 765–66 (N.D. Ill. July 11, 2016).

And even if Plaintiffs won on the merits at trial, Ocwen's inevitable appeals could take years, further delaying the class's relief or barring it altogether. (Norris Decl. ¶ 15); *see Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."). In addition to the risk

of losing at any of these stages, continuing to litigate these claims through trial and appeals undoubtedly would be complex and expensive. (Norris Decl. ¶ 15.)

In sum, the strength of Plaintiffs' case and the range of possible recovery balanced against the risks and expense of continuing to litigate weighs strongly in favor of preliminary approval. *See, e.g.*, *Ikuseghan v. Multicare Health Sys.*, No. 14-cv-05539, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay … Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years."); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) (noting that settlement was approved where "the risk of going forward was substantial" despite the court's belief that case had merit); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting that in the class action settlement context, it is "proper to take the bird in hand instead of a prospective flock in the bush").

*Second*, the third factor, which compares the relief offered in the settlement to the possible relief that could be obtained at trial, *see In re Home Depot, Inc. Customer Data Security Breach Litig.*, No. 1:14-md-02583, 2016 WL 6902351, at *5–6 (N.D. Ga. Aug. 23, 2016), similarly cuts in favor of preliminary approval. The proposed Settlement provides for significant monetary relief in the form of a $9.7 million Settlement Fund, from which Settlement Class Members will be entitled to

a *pro rata* share based on the proportion of the total Convenience Fee charges that they paid for each of their class loans.  (Settlement ¶¶ 2.1.32, 4.4.)  This represents approximately thirty percent (30%) of the aggregate amount of Convenience Fees charged to Class Loans during the relevant period (Settlement ¶ 4.4; Norris Decl. ¶ 16), without having to litigate through trial and inevitable appeals, which supports preliminarily approving the Settlement.  *See Rodriguez*, 563 F.3d at 965 (finding "the negotiated amount [to be paid in settlement] is fair and reasonable no matter how you slice it" when the amount was 10% of the class's trebled damages estimate).  Since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class members' estimated losses."  *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001).  Courts both within and outside this Circuit have also recently approved a number of mortgage servicing-related class action settlements providing recovery rates of 20% or less.[9]

Furthermore, in addition to the monetary relief the Settlement provides, it also secures valuable prospective relief for the Settlement Class.   The Settlement

---

[9] *See, e.g*., *Lee*, 2015 WL 5449813, at *6 (approving settlement offering 12.5% recovery); *Montoya v. PNC Bank, NA*, No. 14-cv-20474, 2016 WL 1529902, at *11 (S.D. Fla. Apr. 13, 2016) (same); *Gaudin v. Saxon Mortg. Servs., Inc*., No. 11-cv-01663, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (13.6% recovery); *Jackson v. Wells Fargo Bank, NA*, 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015) (19.5% recovery); *Arnett v. Bank of Am., NA*, No. 3:11-cv-1372, 2014 WL 4672458, at *6 (D. Or. Sept. 18, 2014) (13.3% recovery); *Rose v. Bank of Am. Corp*., Nos. 5:11-cv-02390, 5:12-cv-04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving settlement offering 4% relief based on average recovery of $20 to $40 per class member as compared to $500 to $1,500 in potential damages).

43

provides for a global amendment of the Settlement Class Members' loan documents in order to cure the issue that caused this litigation in the first place, by expressly authorizing Convenience Fees for methods of payment not otherwise provided for in the Settlement Class Members' underlying loan documents.  (Settlement ¶ 8.6). Because these payment methods and the fees charged for them are not mandatory, and the fees to be charged for them are less than the late fees that borrowers contractually can be charged if their payments are made beyond the grace period (*see* Docs. 9-4, 9-6), this amendment preserves the ability of Settlement Class Members to use otherwise potentially unavailable optional methods of rapid payment when necessary to avoid higher late charges or when otherwise preferable for them, and to do so in a manner that previously has been approved by the Federal Trade Commission.  *See* Statements of General Policy Or Interpretation Staff Commentary On The Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107, 1988 WL 269068 (F.T.C. Dec. 13, 1988).

The Settlement also provides for clear and appropriate disclosures before Convenience Fees are charged in a given transaction under the amendment, so that Settlement Class Members will know that the payment method is optional and what the fees are for that method of payment.  (Settlement ¶ 8.6.)  This is eminently fair to all concerned.  *See Bennett v. SimplexGrinnell LP*, No. 11-cv-1854, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (noting "the significant value of the

prospective relief also obtained in the settlement agreement" warranted preliminary approval); *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (same).

*Third*, and finally, the sixth factor (the "stage of proceedings at which settlement was achieved") demonstrates that the parties "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14-cv-0268, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016). The Settlement was achieved only after resolution of Ocwen's motion to dismiss the operative complaint in its entirety and a protracted, five-month long mediation process, which process involved significant informal discovery among the Parties and substantial communications with the mediator and among the Parties regarding the Parties' respective views of the merits of the Action. Following such a fulsome process, the Parties were fully informed on all pertinent issues, and capable of assessing the benefits of the proposed Settlement. (Norris Decl. ¶ 14); *Home Depot*, 2016 WL 6902351, at *6 (approving settlement achieved while motion to dismiss was still pending, where it was apparent that the plaintiffs "had sufficient information to evaluate the benefits of the settlement against further litigation").

## IV. The Court should approve the proposed notice plan.

Once a class has been certified, Due Process and Rule 23 require that the Court

"direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is, whenever possible "[i]ndividualized notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the Parties have agreed upon a multi-part notice plan to be carried out by Class-Settlement.com, the Settlement Administrator, a well-respected class action settlement administrator. First, within twenty-one (21) days after entry of an order granting preliminary approval, the Settlement Administrator will send direct notice by First-Class U.S. Mail, proper postage prepaid, to the Settlement Class Members whose mailing address Ocwen has in its records. (Settlement ¶ 5.2.2.) Before mailing, the Settlement Administrator will attempt to update the last known mailing address for each Class Loan through the United States Postal Service's National Change of Address system or similar databases. (*Id.*)

Next, any notices returned by the United States Postal Service with a new or forwarding address shall be re-mailed by the Settlement Administrator to the forwarding address. (Settlement ¶ 5.2.5.)

If any Class Notices are returned without a new or forwarding address, the Settlement Administrator will determine whether a valid address can be located

through the National Change of Address system or other reasonable means and will promptly re-mail such notices after obtaining a valid address.  (*Id*.)

Finally, no later than the date of first mailing of a Class Notice, the Settlement Administrator will establish, maintain, and update a Settlement Website, which will disclose to Settlement Class Members the terms of the Settlement and their rights, dates, and deadlines.  Moreover, the Settlement Website will also include electronic copies of the Operative Complaint, the Settlement and its exhibits, and any preliminary approval order entered by the Court, supplemented later by a copy of any petition Class Counsel and Plaintiffs may file for an award of Attorneys' Fees and Expenses and Service Awards.

In addition to being reasonably calculated to reach the Settlement Class, notice is adequate when it provides the information necessary to make a decision in language that can readily be understood by the average class member.  *See Eisen*, 417 U.S. at 173–74.  As a general rule, Rule 23 notice should: (1) define the class, and disclose whether certification is limited or conditional in nature; (2) describe the litigation, including the allegations of the complaint; (3) summarize the essential terms of the proposed settlement; (4) describe the options available to each class member under the proposed settlement, along with any deadlines; (5) disclose any requested allowances for attorneys' fees and special benefits to the class representatives; (6) disclose the time and place of the fairness hearing and describe

its purpose; (7) describe the procedures for filing appearances and objections; (8) disclose how class members can contact class counsel; and (9) explain how class members may inspect and obtain documents relating to the settlement and the entire litigation.  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 at 295-96; 2 NEWBERG ON CLASS ACTIONS (FOURTH) § 8:32. "It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd.*, 737 F.2d 982 (11th Cir. 1984); *accord Faught*, 668 F.3d at 1239-40.

Here, the format and language of the Class Notice form has been carefully drafted in straightforward, easy-to-read language, and all information required under Rule 23 is present.  (*See* Settlement, Exhibit 1.)  The Class Notice:

- Defines the Settlement Class and discloses that it has been certified for purposes of settlement only;

- Discloses each Settlement Class Member's right to opt-out of the Settlement and the method and deadlines for doing so;

- Describes the litigation and the key allegations of the Operative Complaint;

- Summarizes the key terms of the Settlement, and discloses that the notice is merely a summary of the Settlement's actual and complete terms;

- Provides information to Settlement Class Members on how they may obtain additional information, contact Class Counsel, and inspect at the

Clerk of the Court's office additional documents relating to the Settlement and the Action generally;

- Describes the relief to be offered to Settlement Class Members under the Settlement, their options under the Settlement, and the procedures for filing appearances and objections;

- Identifies and explains the scope of the proposed Release and Released Claims, as well as the additional consideration to Ocwen in the form of the proposed amendments to the Settlement Class Members' loan documents;

- Discloses that Service Awards to Plaintiffs, and Attorneys' Fees and Expenses to Class Counsel, will be sought, but that such awards must be approved by the Court and that Ocwen has retained its right to object to any applications for such awards if Ocwen finds them to be objectionable; and

- Provides the time and location of the Fairness Hearing, along with a description of that hearing's purpose.

The form and content of the proposed Class Notice provides Settlement Class Members with sufficient information to make an informed and intelligent decision about joining or opting out of the Settlement.

Because the content and proposed methods of distribution of notice to members of the Settlement Class comports with both Rule 23 and Due Process, the notice plan should be approved by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (1) conditionally certifying the proposed Settlement Class for purposes of settlement only, (2) naming Mr. McWhorter and Mr. Fielder as class representatives, (3) appointing D. Frank Davis, John E. Norris and Wesley W. Barnett of the law

firm of Davis & Norris LLP as Class Counsel, (4) granting preliminary approval of the Settlement, (5) approving the proposed notice plan, (6) scheduling a final Fairness Hearing, and (7) granting such further relief as the Court deems reasonable and just.

/s/ Wesley W. Barnett_____
Wesley W. Barnett
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Dargan Ware (WAR089)
Kristen B. Rivers
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing document by Electronic Filing, on this the 11th day of June, 2018 which will send a notice of electronic filing to all counsel of record:

/s/ Wesley W. Barnett_____
One of the Attorneys for Plaintiff