FILED
2019 Aug-01  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAROLD MCWHORTER, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO.: 2:15-CV-01831-MHH |
| | ) |
| OCWEN LOAN SERVICING, LLC, | ) |
| ET AL., | ) |
| | ) |
| Defendants. | ) |

---

## FINAL ORDER AND JUDGMENT

---

This matter is before the Court on the Plaintiffs' Motion for Final Settlement Approval, filed on July 5, 2019 (Doc. 65, "Plaintiffs' Motion"), Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion for Final Approval of Class Action Settlement, filed on July 5, 2019 (Doc. 66, "Ocwen's Motion")[1], and Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards, filed on May 22, 2019 (Doc. 61, "Fee Motion"), along with the related memoranda, evidence, and other exhibits submitted in support thereof.  On February 6, 2019, the Court entered

---

[1] As explained in declarations accompanying Ocwen's Motion and by Ocwen's counsel during the fairness hearing, Ocwen Loan Servicing, LLC no longer exists as a standalone entity, having been merged into another wholly owned subsidiary of Ocwen Financial Corporation in or around June of 2019.  Its successor-in-interest for the purposes of this settlement is PHH Mortgage Corporation ("PHH"), which has assumed Ocwen's obligations under this Settlement.  (*See* Doc. 66-3, ¶ 1). Hereinafter, references to "Ocwen" also include PHH.

an Order preliminarily certifying a class for settlement purposes, granting preliminary approval of the class action settlement, and directing the issuance of notice (Doc. 59, the "Preliminary Approval Order").  The parties assert that they have complied with the requirements of the Preliminary Approval Order and request that the Court finally approve the terms of their settlement.  On July 17, 2019 at 10:00 AM CT, the Court held a fairness hearing to consider the pending motions and the parties' additional evidence and argument for the purposes of determining whether or not to give final approval to the parties' proposed class action settlement. For the reasons given during the fairness hearing and set forth in more detail below, the Court gives final approval to this class action settlement.

## I.       Background

Ocwen is a mortgage servicing company and, as a mortgage servicer, Ocwen collects and processes borrowers' loan payments.  This case stems from Ocwen's alleged practice of charging borrowers a "Convenience Fee[2]" for the option of making loan payments by telephone, through an interactive voice response telephone system ("IVR"), or through the internet.  (Doc. 2, ¶¶ 9, 11).  During the relevant time period, Ocwen used Western Union's "Speedpay™" service to facilitate these kinds of payments, so the Convenience Fees charged by Ocwen were often referred to as

---

[2] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in Section 2 of the Amended Stipulation.

"Speedpay fees."  For online payments, charges were $10.00.  (Declaration of Krysta Sebastian ("Sebastian Decl."), ¶ 6) (Doc. 66-3)).  For over-the-phone payments, charges were $12.00 if the borrower used an interactive voice menu system (*id.*), or $19.50 if the borrower paid over the phone and spoke to a live representative (*id.*).  Western Union received a portion of the fee, and Ocwen received the balance of the fee.

Plaintiffs contend that these fees were unlawful under the FDCPA even though class members consented to them at the time of each transaction,[3] because the fees were not expressly authorized by the Settlement Class Members' underlying loan documents. These fees were less than the late fees Ocwen contractually could have charged borrowers if their payments were made outside of their loans' respective grace periods.  (*See* Docs. 9-4, ¶ 6(A); 9-6 ¶ 6(A)) (late charge provisions in loan documents for Fielder and McWhorter).

Plaintiffs McWhorter and Fielder have home loan mortgages that were serviced by Ocwen.  (Doc. 2, ¶¶ 7–8.)  Mr. Fielder's loan was in default when Ocwen acquired servicing rights to it.  (*Id.* ¶ 8; Doc. 31 at 3.)  When Ocwen acquired servicing rights to Mr. McWhorter's loan, Mr. McWhorter had completed a "Trial Period Plan Agreement" and was eligible for a permanent loan modification that would cure any default on Mr. McWhorter's loan.  (Doc. 36 at 4–5.)  Ocwen acquired servicing rights to Mr.

---

[3] (Doc. 9-5 (exemplar transcript of Plaintiff Fielder consenting to Convenience Fees); Docs. 9-8, 9-9 (exemplar transcripts of Plaintiff McWhorter consenting to Convenience Fees); Doc. 31 at 3–4).

McWhorter's loan before the permanent loan modification agreement was executed. (*Id.*) As a result, the Court determined that Mr. McWhorter was in default when Ocwen acquired the loan servicing rights. (*Id.* at 5, 7–8.)

On occasion, Plaintiffs made payments on their mortgage loans to Ocwen by telephone, IVR, or the internet, even though their underlying loan documents did not require Ocwen to offer or facilitate those forms of payment. (Doc. 2, ¶¶ 8–10). During the time period relevant to this action, Plaintiff McWhorter paid a total of $19.50, and Plaintiff Fielder paid a total of $91.50, in Convenience Fees. Ocwen received a portion of these payments. Each time they made these payments by phone or over the internet, Plaintiffs were informed of the amount of the Convenience Fees. The plaintiffs expressly consented to the imposition of the Convenience Fees before finalizing their payments. (Doc. 31 at 3–4).

The plaintiffs filed this action on October 30, 2014 against another defendant. On December 5, 2014, the plaintiffs added Ocwen as a defendant, and the claims against Ocwen were then severed into this separate action on October 19, 2015. (Doc. 1.) In the operative complaint, Plaintiffs allege that Ocwen violated the FDCPA by charging Convenience Fees to borrowers that were not expressly authorized by the terms of their underlying loan documents. (Doc. 2, ¶¶ 21–22.) Plaintiffs asserted their claims on behalf of a putative class of other individuals who paid Convenience Fees to Ocwen on or after December 5, 2013.

Ocwen moved to dismiss the claims asserted in the operative complaint by arguing, among other things, that all customers who were charged a Convenience Fee (a) were informed in advance that such fees were optional and avoidable, and would result in a disclosed charge amount, and (b) were required to expressly consent to the Convenience Fee before it was charged, such that under both the plain language of the FDCPA and regulatory guidance issued by the Federal Trade Commission, there was no FDCPA violation because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. Ocwen's motion to dismiss the action was ultimately denied by the Court in orders entered on August 3, 2017 and September 28, 2017. (Docs. 31, 36.) Ocwen then filed an answer to Plaintiffs' operative complaint, expressly denying the plaintiffs' allegations. (Doc. 32).

Recognizing that different courts had reached different conclusions on the merits of the claims presented, and given the existence of contradictory regulatory guidance on the issue, the parties decided to mediate the dispute. Over a five month period from November 30, 2017 through March 21, 2018, the parties engaged in three separate in-person mediation sessions, along with a number of telephonic mediation discussions between those dates. The entire mediation process was overseen by independent mediator Marty Van Tassel of Upchurch Watson White &

Max, who is a member of this Court's published Alternative Dispute Resolution Panel of Neutrals. The mediation process included exchanges of informal discovery and due diligence information and data concerning Plaintiffs' claims and Ocwen's defenses. (Doc. 54-1, ¶ 1.4).

Ultimately, on June 11, 2018, the parties entered into a Stipulation of Settlement and Release (Doc. 49-1, the "Original Stipulation"), and Plaintiffs presented the Original Stipulation to the Court for preliminary approval that same day. (*See* Doc. 49). Pursuant to the Class Action Fairness Act ("CAFA"), Ocwen then provided timely notice of the proposed Settlement to the various state and federal officials, including the attorneys general of the United States, each of the fifty states, the District of Columbia, the Virgin Islands, and Puerto Rico. (*See* Doc. 51 at 2–3; Doc. 51-1, ¶ 2). In response, certain state attorneys general and regulators suggested that the parties add additional language to the Class Notice calling early attention to the fact that the proposed Settlement involved an amendment to the underlying loan documents of the Settlement Class, and that the parties revise the Original Stipulation to include an agreement by Ocwen not to raise its Convenience Fees above their current levels before August 1, 2020. (Doc. 54, ¶ 2). The parties acted upon those suggestions and executed the Amended Stipulation, which Plaintiffs presented to the Court for preliminary approval on August 9, 2018. (*Id.*)

During a telephonic conference with the parties on January 9, 2019, the Court proposed revisions to the Class Notice to clarify the material terms of the settlement. The parties made those proposed revisions and submitted an amended Class Notice for the Court's approval on February 4, 2019.  (Doc. 57).  On February 6, 2019, the Court preliminarily approved the settlement as embodied in the Amended Stipulation, as well as the amended Class Notice.  (Doc. 59).  In its preliminary approval order, the Court set June 12, 2019 as the Settlement Class Members' deadline to file objections to the settlement with the Court or serve requests for exclusion from the Settlement Class upon the Settlement Administrator and set July 17, 2019 as the date of the Fairness Hearing.  (*Id*. ¶¶ 8, 16, 19).

## II.    The Terms of the Settlement

### A.    Proposed Settlement Class.

The Amended Stipulation defines the Settlement Class as:

[A]ll borrowers on home mortgage loans that were not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, who, during the period from December 5, 2013 through and including June 1, 2018, paid a Convenience Fee to Ocwen for making a loan payment by telephone, IVR, or the internet.

There are 250,194 potential Settlement Class Members on 182,832 Class Loans at issue in this Action.   (*See* Sebastian Decl., ¶ 8; Declaration of Dorothy Sue Merryman ("Merryman Decl."), ¶ 12(f) (Doc. 66-4)).[4]

### B.   Monetary Relief for Settlement Class Members.

Ocwen has agreed to create a $9,700,000 Settlement Fund.  Every Settlement Class Member will be paid a *pro rata* portion of the fund (less any attorneys' fees and service awards that the Court approves) based on the proportion of Convenience Fees paid to and retained by Ocwen for that class member's Class Loan during the relevant period (December 5, 2013 through June 1, 2018), as compared to the total of all Convenience Fees paid to and retained by Ocwen on all Class Loans during that same period.  (Doc. 54-1, ¶ 4.5).  In other words, and by way of illustration, if the Convenience Fee charges paid to and retained by Ocwen between December 5, 2013 and June 1, 2018 with respect to a given class loan equal 1% of the total Convenience Fee charges paid to and retained by Ocwen during that period with

---

[4] In Plaintiffs' Motion for Preliminary Approval (Doc. 49), Plaintiffs asserted that the settlement class consisted of 250,194 potential settlement class members on 182,832 class loans.  (Doc. 49 at 7–8).  This assertion was based on the class roster as it existed at that point in time, and was also supported by the Declaration of John D. Meyer, a former employee of Ocwen's parent corporation, Ocwen Financial Corporation.  (Doc. 48-1, ¶¶ 5–6).  The Court adopted the parties' estimation of the number of potential settlement class members and potential class loans in its Preliminary Approval Order.  After the Court granted preliminary approval, the Settlement Administrator analyzed the class roster to identify duplicate loan numbers and borrower names.  The Settlement Administrator found one entry that did not pertain to an actual loan, and several hundred duplicate borrower names.  (Merryman Decl., ¶¶ 12(d), 12(e)).  After removing the duplicate and inaccurate loan numbers and borrower names, in total, the Settlement Class contains 249,798 potential members on 182,831 class loans.  (Merryman Decl., ¶ 12(f)).

respect to every Class Loan, then the Settlement Class Members holding that Class Loan would jointly receive an individual allocation equal to 1% of the remainder of the Settlement Fund, following the payment of any Court-awarded attorneys' fees and costs and incentive awards.

For Class Loans that Ocwen is still servicing at the time of distribution, the individual allocation will be distributed in the form of a credit to reduce the unpaid principal balance of the loan.  (Doc. 54-1, ¶ 4.6).  If a Class Loan no longer is being serviced by Ocwen, then a check for the individual allocation will be mailed to the Settlement Class Member(s) holding the loan.

### C.    Amendment of Class Loans and Agreement Regarding Convenience Fee Assessment.

In addition to the foregoing monetary relief, the parties and upon the Final Settlement Date, by operation of law, the Settlement Class Members have agreed that for Class Loans still serviced by Ocwen on June 1, 2018, the loan documents shall be deemed amended, effective as of June 1, 2018, to expressly authorize Ocwen to accept payments made through means not specifically provided for in the borrower's loan documents, and to charge Convenience Fees in return for accepting those payments.  (Doc. 54-1, ¶ 8.6).[5]

---

[5] Moreover, if for any reason the foregoing is deemed ineffective to expressly authorize such Convenience Fees for purposes of any state or federal statute, law or regulation, then upon request by Ocwen, Plaintiffs and the Settlement Class have agreed to execute any and all documents as may be sufficient or necessary to authorize such Convenience Fees under such statute, law or regulation, and such documents shall be effective as of June 1, 2018.  (Doc. 54-1, ¶ 8.6).

In turn, Ocwen has agreed not to increase the Convenience Fees that it charges to accept payments via telephone, IVR, or the internet before August 1, 2020, at the earliest. (*Id.*). Ocwen also agreed that in payment transactions involving a Convenience Fee following the Final Settlement Date, Ocwen shall provide a rigorous set of contemporaneous disclosures regarding the amount and avoidable nature of the Convenience Fee, as well as disclosing other optional payment methods that would involve no fee or a lower fee. (*Id.*).

### D.    Release and Settlement Consideration for Ocwen.

In exchange for the relief just described, Plaintiffs and the Settlement Class, upon entry by the Court of a Final Order and Judgment approving the Settlement, will release Ocwen from any and all claims that relate to or arise out of Ocwen's collection of Convenience Fees during the relevant time period. (Doc. 54-1, ¶ 8.1).

### E.    Payment of Notice and Administration Costs.

Based on the parties' agreement (*see* Doc. 54-1, ¶ 2.1.29), the Court appointed Class-Settlement.com to act as the Settlement Administrator and to, among other things, provide notice to the proposed Settlement Class. (Doc. 59, ¶ 10). The costs of distributing notice and for Settlement Administration have been paid separately by Ocwen, outside of, and in addition to, the Settlement Fund being offered to Settlement Class Members. (Doc. 54-1, ¶ 4.8.)

## F.    Attorneys' Fees and Incentive Awards.

The parties did not negotiate the fee sought by Class Counsel as part of the mediation.  Fees, expenses, and service awards that the Court approves will be paid from the Settlement Fund (Doc. 54-1, ¶ 9.3), but the Settlement is not conditioned upon the Court approving *any* fee and expense awards to Class Counsel or service awards to Plaintiffs (*id*. ¶ 9.6).  In fact, Ocwen reserved its right to object to the requests for a service award, attorneys' fees, and expenses.

Subsequent to preliminary approval, and in accordance with the Preliminary Approval Order, Plaintiffs have now sought attorneys' fees of one third of the common fund, $7,977.95 in expenses, and $15,000.00 to each of the two named plaintiffs as a service fee award. There have been no objections regarding the requested attorney's fees and incentive awards. The Court will address the service awards to Plaintiffs and Class Counsel's fee request in sections V and VI, *infra*.

## III.    Notice to and Reaction of the Settlement Class

Following preliminary approval of the settlement, and as ordered by the Court in its preliminary approval order, Ocwen caused the Settlement Administrator to distribute timely notice of the settlement to the Settlement Class Members.  (*See* Merryman Decl., ¶¶ 11–14).

The Settlement Administrator received 105 requests for exclusion on or before the June 12, 2019 deadline.  (*Id*. ¶ 21).  Fifty of those requests were submitted

on behalf of 62 members of the Settlement Class and covered 48 Class Loans.  (*See id.* ¶ 21, Ex. C).[6]  Another 53 of those requests were submitted by persons who are not members of the Settlement Class.  (*Id.* ¶ 21, Ex. C).  Finally, two of the requests for exclusion did not provide sufficient information from which the Settlement Administrator and parties could determine whether or not the request for exclusion was submitted by a member of the Settlement Class.  As explained by counsel for Ocwen during the fairness hearing, and in Ms. Merryman's declaration (*id.*, Ex. C):

- One of those two exclusion requests was submitted by Tanya Flores (co-borrower Hector Flores) (the "Flores opt out"), who did not include her loan number in her request as she was required to do in the Preliminary Approval Order and Class Notice.  A borrower with the same name but a different address is listed on the class roster.

- The other request was submitted by Betty Lopez (the "Lopez opt out"), who included a loan number in her request.  A borrower named "Betty Ann Lopez" is included on the class roster, but at a different address and with a different loan number.

---

[6] One of those 50 timely, valid requests for exclusion was submitted by Winston Bowen-Hay, who is not a member of the Settlement Class, purportedly on behalf of the Estate of Gloria Augusta Hay, which is a member of the Settlement Class.  At the time the parties' submitted their Motions, and at the time of the fairness hearing, neither the parties nor the Settlement Administrator were able to confirm that Mr. Bowen-Hay had authority to act on behalf of the Estate of Gloria Augusta Hay.  Since the fairness hearing, the parties have confirmed Mr. Bowen-Hay's authority, which was communicated to the Court by counsel for the parties during a July 18, 2019 teleconference at 2:00 PM CST. Mr. Bowen-Hay's opt out request is deemed valid and effective.

Only three objections were submitted to the settlement: by Goldie Brown Mitchell (Doc. 67), Terry G. Kennedy (Doc. 68)[7], and Karyn A. Meriwether (Doc. 69).[8] None of the three objectors appeared at the fairness hearing.

Goldie Brown Mitchell and Terry Kennedy generally objected to the settlement as not providing sufficient relief to the Settlement Class but failed to provide an explanation as to why the settlement relief is insufficient.

Ms. Meriwether objected to the Class Notice, which, she claims, did not adequately disclose (a) that Settlement Class Members' state law claims arising from Ocwen's collection of Convenience Fees during the relevant time period were being released and (b) that the underlying loan documents for Settlement Class Members would be amended to allow Settlement Class Members to make payments via telephone, IVR, and the internet, and Ocwen to charge Convenience Fees for the use of those payment methods.  (*See* Doc. 69 at 2–5, 7; *id*. at 19–22).  The Class Notice, as approved by the Court, in fact discloses both.

---

[7] It is unclear whether Mr. Kennedy is a member of the Settlement Class.  A borrower with the same name but a different address appears on the class roster.  Mr. Kennedy did not provide his loan number in his objection.  Regardless, the Court has considered the substance of the objection in reaching its decision to grant final approval of the settlement.

[8] All three objections were timely mailed to the Clerk of the Court, but none were filed by the Clerk of the Court on or before the Objection/Exclusion Deadline.  On July 17, 2019, after the Court realized that the objections had not been filed, the Court caused the Clerk to file the objections.  The objection of Karyn A. Meriwether was served upon counsel for the parties on or before June 12, 2019, but none of the other objections were so served.

Ms. Meriwether also objected to the settlement itself, for two reasons.  First, she claims that the settlement is not "fair, adequate and reasonable" because, she claims, the settlement consideration that she and other Settlement Class Members from Maryland will receive is not sufficient to justify the release of the Maryland state law claims. (*Id*. at 17–19).  Second, she claims that the statute of frauds prohibits the settlement from operating as an amendment to the Settlement Class Members' underlying loan documents to allow them to make loan payments via telephone, IVR, or the internet, and to allow Ocwen to charge Convenience Fees for the use of those payment methods.  (*Id*. at 5–6).  Ms. Meriwether's loan documents, however, are not among the loan documents that will be amended by the settlement. Instead, servicing of Ms. Meriwether's loan transferred from Ocwen to Fay Servicing LLC on August 1, 2016 (*see* Declaration of Gina Freezer ("Freezer Decl."), ¶ 4 (Doc. 66-5); Doc. 69 at 6), while only Class Loans still serviced by Ocwen as of June 1, 2018 will be amended.

Ms. Meriwether purports to submit her objections on behalf of a "subclass" of Maryland residents, although no one else has joined her objection.  (*See* Doc. 69 at 7; *id*. at 10, 13, 22).  In the alternative, she has moved to intervene on behalf of herself and a proposed Maryland subclass.  (*See id*. at 7–8).

**IV.      Final Approval of Class Action Settlement**

**A. Reasonable and Adequate Notice Was Provided to the Class.**

Before granting final approval, a court must ensure that reasonable and adequate notice was provided to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985).  This is because the Due Process Clause and Rule 23 require a court to "direct notice … to all class members who would be bound by the" settlement.  FED. R. CIV. P. 23(e)(1)(B).  Such notice must be "the best notice that is practicable under the circumstances," directed individually "to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).

Here, both the form and content of the Class Notice, and the method of distributing notice to the Settlement Class, satisfied all applicable requirements of law.

**1.      The Form and Content of the Class Notice Satisfied All Applicable Requirements of Law.**

Notice of a class action settlement is adequate if it provides sufficient information for class members to make a decision about whether to remain in the class in language that can readily be understood by the average class member.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974).  "It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained."

*Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd.*, 737 F.2d 982 (11th Cir. 1984); *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239–40 (11th Cir. 2011).

In this case, after revising the proposed class notice, the Court approved the form and content of the parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of this action, [of] the terms of the proposed settlement," and of their rights under and with respect to it. (Doc. 59, ¶ 13). There is no reason for the Court to depart from this conclusion now.

In her objection, Ms. Meriwether contends that the Class Notice did not inform her or the other Settlement Class Members "that failure to opt out of the present settlement might preclude participation under state law claims." (Doc. 69 at 22). The Court overrules Ms. Meriwether's objection.

First, the Class Notice does disclose that settlement class members who fail to opt out will not be able to assert state law claims relating to Convenience Fees during the relevant class period. In bolded type, on the very first page of the Class Notice, in plain, easy-to-understand language, the Class Notice identifies the scope of the release:

> **What the Settlement Class is giving up**: In return for the relief that Ocwen is providing, Settlement Class Members are deemed to have agreed to the following:

- **A release of *any claims* that they may have against Ocwen relating in *any way* to their payment of Convenience Fees during the relevant time period**.

(Doc. 59-1 at 1 (italics added but bold in original)).  This language makes clear that Settlement Class Members who do not exclude themselves from the Settlement Class will give up all claims that they may have related to the payment of Convenience Fees.

The Class Notice also included the full text of the Amended Stipulation's release provision, which again emphasized that "**the release of *any claims***" included a class member's potential *state law claims* and made clear that the only way to avoid the release would be to seek exclusion from the class.  (Doc. 59-1 at 5).

The language of the notice is more than sufficient to advise class members who chose not to opt out that they have released their state law claims against Ocwen for the relevant time period.  *See Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 633–34 (11th Cir. 2015) (notice that "did not set forth the scope of the release" but directed class members where to download the full settlement agreement was adequate); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 115–16 (2d Cir. 2005) ("Since the release was quoted in its entirety, the [district] court concluded that 'the expansive reach of the release[] could not have been clearer.  This is all that was required.'  We agree.") (citation omitted).  The Court is aware of no law requiring that settling parties anticipate and give notice of every possible type of

17

state law theory that a litigant might pursue.  Indeed, the law authorizes broad

general releases of all claims arising from a transaction.  *See, e.g.*, *Matsushita Elec.*

*Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 380–87 (1996) (enforcing broad class-wide

release of claims related to the transaction at issue, even of federal claims that could

not have been pressed in the court in which the settlement was approved).

### 2. The Parties' Methods of Giving Notice to the Settlement Class Satisfied All Applicable Requirements of Law.

The Court also approved the parties' methods of delivering notice to the

Settlement Class.  (Doc. 59, ¶¶ 12–13).  The Settlement Administrator now has

verified compliance with the Court-approved notice program and calculated that

notice actually reached more than 98% of the Settlement Class Members.

(Merryman Decl., ¶¶ 13–17).[9]  No one has objected to the method of notice.

In addition, the Settlement Class Members could access the settlement website

beginning on February 25, 2019.  (*Id*. ¶ 4).  The settlement website allowed

Settlement Class Members to view and download copies of the Class Notice, the

Amended Stipulation, Preliminary Approval Order, and the operative complaint

(*id*.).  The settlement website also included a summary of important deadlines,

instructions for opting-out or objecting, and information on how to contact the

---

[9] The Settlement Administrator attempted to send notice, via first class mail, to all members of the Settlement Class.  The roster of Settlement Class Members contained 182,831 loans, with 249,798 potential Settlement Class Members as borrowers on the loans.  A total of 2,404 class notices were returned by the United States Postal Service as undeliverable and without forwarding address information.  (*See* Merryman Decl., ¶ 17).  Thus, the direct mail success rate was 98%.  (*Id*.).

Settlement Administrator.  (*Id.* ¶ 5, Ex. A).  Because the parties complied with the notice provisions preliminarily approved by the Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court concludes that the notice provided in this case satisfied the requirements of Rule 23(c)(2)(B).

**B.     Certification of Settlement Class.**

The Court notes that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusions.  Thus, the Court will make final its certification of the Settlement Class, for the reasons stated in the Preliminary Approval Order and based on the entire record in this matter.  (*See* Doc. 59, ¶¶ 5–6).

**C.     The Settlement Satisfies the Standards for Judicial Approval.**

**1.     The Standards for Judicial Approval of Class Action Settlements.**

It is well established that settlements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits."  *Miller v. Republic Nat'l. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (citations and internal quotation marks omitted)[10]; *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the

---

[10] In *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on October 1, 1981.

pretrial settlement of class action lawsuits.").   A district court, in reviewing a
proposed settlement of a class action case, must find that there has been no fraud or
collusion between the parties in arriving at the proposed settlement and that the
proposed settlement is "fair, adequate and reasonable."  *See Miller*, 559 F.2d at 428–
29; *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); FED. R.
CIV. P. 23(e)(2).

The Eleventh Circuit has outlined several factors that a court must consider in
determining whether a proposed class-action settlement is fair, adequate, and
reasonable:

(1) the likelihood of success at trial;

(2) the range of possible recovery;

(3) the point on or below the range of possible recovery at which a
settlement is fair, adequate, and reasonable;

(4) the complexity, expense and duration of the litigation;

(5) the substance and amount of opposition to the settlement; and

(6) the stage of the proceedings at which the settlement was achieved.

*See Bennett*, 737 F.2d at 986.  In weighing these factors, the Court may "rely upon
the judgment of experienced counsel for the parties," and "absent fraud, collusion,
or the like," is "hesitant to substitute its own judgment for that of counsel."  *See
Canupp v. Liberty Behavioral Health Corp.*, 417 Fed. Appx. 843, 845 (11th Cir.
2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Effective December 1, 2018, Rule 23 was amended to add a mandatory but non-exhaustive set of similar final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)     the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  Applying these factors, the Court concludes that the class settlement is fair, adequate, and reasonable under the circumstances of this case.

## 2.     Class Counsel and Plaintiff Have Adequately Represented the Settlement Class.

The class representatives and class counsel have adequately represented the plaintiff class.  FED. R. CIV. P. 23(e)(2)(A).  The Court has already found that Plaintiffs and Class Counsel were "informed of and familiar with the legal and factual issues" in this case during the parties' settlement negotiations, through the extensive confirmatory discovery they conducted.  (Doc. 59, ¶ 7).  The record

21

supports that finding.  Plaintiffs and Class Counsel engaged in informal discovery with Ocwen; the parties exchanged documents, information, and data concerning Ocwen's procedures for accepting loan payments made by telephone, IVR, or the internet; Ocwen's policies and procedures for authorizing and collecting Convenience Fees associated with loan payments made by such means; various data regarding each of the Plaintiffs; and the total volume and dollar amount of Convenience Fees collected during the relevant time period from borrowers whose Class Loans were serviced but not owned by Ocwen.  Plaintiffs and Class Counsel confirmed Ocwen's practices with regard to the Class, the exact persons who made up the Class, and the relevant legal landscape that applied to the collection of Convenience Fees for allowing payments by telephone, IVR, or the internet.

Having adequately informed themselves regarding the merits of the case, Class Counsel vigorously negotiated the resolution of the case through three separate mediation sessions.  (Doc. 54-1, ¶¶ 1.4–1.5).  Moreover, the agreement that the parties reached at the end of mediation—after more than five months of informed negotiation—offers Settlement Class Members a *pro rata* share of a $9.7 million Settlement Fund, which represented nearly 30% of the aggregate amount of Convenience Fees that Ocwen collected and retained from Class Loans after December 5, 2013, excluding the portion of Convenience Fees that Ocwen remitted to Western Union.  (Doc. 49-5, ¶ 16; Sebastian Decl., ¶ 9).  The Settlement Class

will receive this relief despite substantial challenges to prevailing on the merits at trial and on appeal, without having to file a claim, and with the right to opt out having been afforded.  Further discovery would not yield a better result.

Under these circumstances, the Court finds that Class Counsel and Plaintiffs adequately represented the Settlement Class.  This factor favors the settlement's final approval.

### 3.   The Settlement is the Product of Arms'-Length Bargaining and Mediation.

In evaluating a settlement's fairness, adequacy, and reasonableness, a court should ensure that the settlement is not the product of collusion by the negotiating parties.  FED. R. CIV. P. 23(e)(2)(B); *Bennett*, 737 F.2d at 986.  The Court has already found that the settlement "is the result of non-collusive, arm's length negotiations among experienced counsel informed of and familiar with the legal and factual issues of the action."  (Doc. 59, ¶ 7).  The record supports the Court's finding.  The parties' protracted settlement negotiations occurred after adequate investigation and informal discovery and were overseen by Marty Van Tassel, an experienced mediator who is a member of this Court's Panel of Neutrals.  *See* FED. R. CIV. P. 23(e)(2)(B), Committee Notes on Rules – 2018 Amendment ("[T]he involvement of a neutral or court-affiliated mediator … may bear on whether [the negotiations] were conducted in a manner that would protect and further the class interests."); *accord Poertner v. Gillette Co*., 618 Fed. Appx. 624, 630 (11th Cir. 2015).

23

There are no side-agreements, and Class Counsel negotiated for terms of settlement designed to avoid any sort of "self-dealing" or "conflict-of-interest" concerns.  The settlement is not conditioned upon the award of attorneys' fees and costs to Class Counsel.  (Doc. 54-1, ¶ 9.6).  Moreover, the parties had no discussions about attorneys' fees, expenses, and incentive awards to Plaintiffs until after the parties reached an agreement on the material terms of the settlement and the relief that would be provided to the Settlement Class.  (Doc. 54-1, ¶ 1.5).  Even then, those discussions led to an agreement that Ocwen would not agree to any particular attorneys' fee and incentive awards, and instead would reserve its right to object to any request for attorneys' fees, expenses, and incentive awards.  (*Id.* ¶ 9.1).  The parties expressly agreed that the settlement was not contingent upon the Court awarding any attorneys' fees and expenses or service awards to the Plaintiffs.  (*Id.* ¶ 9.6).  The Court has found no indication of collusion or self-dealing.  FED. R. CIV. P. 23(e)(2)(B), Committee Notes on Rules – 2018 Amendment ("Particular attention might focus on the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms."); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (concluding settlement was procedurally fair because "the fee was negotiated separately from the rest of the settlement, and only after substantial components of the class settlement had been resolved").

The product of the parties' negotiations is a settlement that offers Settlement

Class Members a $9.7 million Settlement Fund and preserves Settlement Class Members' ability to make payments via more rapid, expeditious methods. The record in this case and the substantive terms of the settlement reflect a good faith, armlength bargaining process.[11]   Therefore, the Court finds that the settlement was not the product of fraud or collusion.

### 4.     The Relief Provided for the Settlement Class is Adequate.

Under Rule 23(e)(2)(C), the relief provided for the class in the settlement must be adequate, taking into account:

> (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

FED. R. CIV. P. 23(e)(2)(C).  These factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost, and duration.  *Bennett*, 737 F.2d at 986; *see also Grant v. Ocwen*

---

[11] In her Objection, Ms. Meriwether argues that the settlement is the product of a "reverse auction." (Mem. at 3).  "In a reverse auction, 'a defendant, seeing competing class cases, cherrypicks the attorneys willing to accept the lowest class recovery, in exchange for enhanced fees.'"  *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 388 (D. Minn. 2013) (quoting Manual for Complex Litigation (4th) § 21.61 (2004)).  This settlement was not the product of a "reverse auction."  According to the record before the Court, when the parties negotiated the settlement, Ocwen faced only one class action—*this* class action.  Thus, Ocwen did not "cherrypick" the class counsel willing to accept the lowest class recovery, because there was no one else with whom Ocwen could have settled the claims asserted in this litigation.

*Loan Servicing, LLC*, No. 315CV01376J34PDB, 2019 WL 367648, at *6 (M.D. Fla. Jan. 30, 2019).

Whether under Rule 23(e)(2)(C) or the *Bennett* factors, the relevant inquiry is whether the proposed settlement affords relief that "falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (citation and internal quotation marks omitted).

Here, consideration of the likelihood of success and range of possible recovery at trial for both Plaintiffs and the putative class, measured against the trial's expected complexity, expense, and duration, favors approval of the Settlement.

The Settlement provides immediate monetary relief in the form of a $9.7 million Settlement Fund, from which Settlement Class Members will be entitled to a *pro rata* share based on the proportion of the total Convenience Fee charges that they paid for each of their class loans. (Doc. 54-1, ¶¶ 2.1.32, 4.4). Class Counsel confirms that Ocwen records reviewed during the mediation showed that the Settlement Fund represented nearly 30% of the aggregate amount of Convenience Fees that Ocwen collected and retained from Class Loans beginning on December 5, 2013, excluding the portion of Convenience Fees that Ocwen remitted to Western Union. (Doc. 49-5, ¶ 16; Sebastian Decl., ¶ 9). And the Settlement Class will receive this relief without having to litigate through trial and appeals.

The monetary relief offered by this settlement is within the range of what courts have found to be reasonable.  Since 1995, class action settlements have been approved despite having "recovered between 5.5% and 6.2%" of the class members' potential recovery.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citation and internal quotation marks omitted).  Courts within and outside this Circuit recently have approved a number of mortgage servicing-related class action settlements providing recovery rates of 20% or less.[12]

In addition to monetary relief, the settlement provides for a global amendment of the Settlement Class Members' loan documents to cure the technical legal issue that caused this litigation in the first place, by expressly authorizing Convenience Fees for purely optional methods of payment not otherwise provided for in the Settlement Class Members' original underlying loan documents.  (Doc. 54-1, ¶ 8.6).  Because these payment methods and the fees charged for them are not mandatory, and the fees to be charged for them are less than the late fees that borrowers

---

[12] *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (finding "the negotiated amount [to be paid in settlement] is fair and reasonable no matter how you slice it" when the amount was 10% of the class's trebled damages estimate); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *6 (S.D. Fla. Sept. 14, 2015) (approving settlement offering 12.5% recovery); *Montoya v. PNC Bank, NA*, No. 14-cv-20474, 2016 WL 1529902, at *11 (S.D. Fla. Apr. 13, 2016) (same); *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (13.6% recovery); *Jackson v. Wells Fargo Bank, NA*, 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015) (19.5% recovery); *Arnett v. Bank of Am., NA*, No. 3:11-cv-1372, 2014 WL 4672458, at *6 (D. Or. Sept. 18, 2014) (13.3% recovery); *Rose v. Bank of Am. Corp.*, Nos. 5:11-cv-02390, 5:12-cv-04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving settlement offering 4% relief based on average recovery of $20 to $40 per class member as compared to $500 to $1,500 in potential damages).

contractually can be charged if their payments are made beyond the grace period (*see* Docs. 9-4, 9-6), this amendment preserves the ability of Settlement Class Members to use these otherwise potentially unavailable optional methods of rapid payment when necessary to avoid higher late charges, adverse credit reporting, or foreclosure, or when otherwise preferable for them. The settlement also provides for clear, thorough, and accurate disclosures before Convenience Fees are charged in a given transaction under the amendment, so that Settlement Class Members will know that the payment method is optional, what the fees are for that method of payment, and lower cost alternatives for making their payments. (Doc. 54-1, ¶ 8.6).

Absent settlement, there exists real potential for years of further litigation and the possibility that Ocwen could prevail on the merits or defeat contested class certification. Thus, the Settlement offers a Settlement Fund that is well within the range of what courts within this Circuit and others have found to be reasonable. And it does so *now*—thereby avoiding the risks and delay inherent in litigated class certification proceedings[13] and complex pre-trial legal challenges,[14] the costs associated with discovery and pre-trial proceedings,[15] and the prospect of a lengthy

---

[13] *See, e.g.*, *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *6 (S.D.N.Y. Jan. 31, 2007).

[14] *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

[15] *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

trial and possible appeal by Ocwen.[16]   The prospect of "a long, arduous [trial] requiring great expenditures of time and money on behalf of both parties and the [C]ourt," all in the hopes of achieving a result on par with the relief offered by the settlement, is not in the interests of any party or Settlement Class Member.  *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (noting that in the class action settlement context, it is "proper to take the bird in hand instead of a prospective flock in the bush.").

The process whereby the settlement proceeds will be distributed to Settlement Class Members also counsels in favor of final approval.   FED. R. CIV. P. 23(e)(2)(C)(ii) (instructing courts to consider "the effectiveness of any proposed method of distributing relief to the class").  Every Settlement Class Member who has not opted out of the Settlement Class will automatically receive his or her allocation of the Settlement Fund within sixty days of the Final Settlement Date. Settlement Class Members do not need to submit a claim, do not need to have a claim approved, and do not need to do anything else to obtain their share of the Settlement Fund.

Finally, any Settlement Class Member who believed that he or she had a viable

---

[16] *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 282, 318 (3d Cir. 1998); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484–85 (E.D.N.Y. 2002).

claim for compensatory damages had the right to opt out and pursue those damages, along with the individual statutory damages and attorneys' fees and costs available to individual litigants under the FDCPA.

Accordingly, consideration of the class's likelihood of success and potential recoveries from trial, measured against the complexity and cost of trial and the relief offered by the Settlement, favors the Settlement's final approval.

### 5.   The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The Settlement also treats Settlement Class Members equitably relative to each other.  *See* FED. R. CIV. P. 23(e)(2)(D).  Each Class Loan will receive an individual allocation from the remainder of the Settlement Fund based on the proportion of Convenience Fees paid to and retained by Ocwen on that Class Loan during the relevant period, as compared to the total of all Convenience Fees paid to and retained by Ocwen on all Class Loans combined during that same period.  In other words, each Settlement Class Member will be entitled to his or her pro rata share of the Settlement Fund, based upon the percentage of the Settlement Fund that Settlement Class Member contributed.  This is an appropriate way to allocate and distribute the Settlement Fund. *See, e.g.*, *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2013 WL 11319391, at *4 (S.D. Fla. Aug. 5, 2013) (approving settlement providing for pro rata distribution of settlement fund); *Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at *3 (S.D. Fla. Mar. 20, 2014)

(same).  Plus, under the settlement and this Court's notice program, any Settlement Class Member who believed he had a more valuable claim had the right to opt out and pursue it, along with the individual statutory damages and attorneys' fees and costs available to individual litigants under the FDCPA or under state law.

Nor does the scope of the settlement's release provisions operate in an inequitable manner.  *See* FED R. CIV. P. 23(e)(2)(D), Committee Notes on Rules – 2018 Amendment (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways").  The settlement's release is narrowly limited to claims arising from the specific facts giving rise to this action:  the assessment of Convenience Fees for payments by telephone, IVR, or the internet during the relevant period.  (Doc. 54-1, ¶ 8.1).

### 6.     The Substance and Amount of Any Opposition to the Settlement

Including the Flores and Lopez opt outs, at most 65 borrowers on 50 loans within the Settlement Class have sought to opt-out of the Settlement, resulting in an opt-out rate under 0.03%.  (*See* Merryman Decl., ¶ 21).  Three potential Settlement Class Members submitted objections.  The low opt-out and objection rates weigh in favor of granting final approval to the settlement.  *See, e.g.*, *Grant*, 2019 WL 367648, at *8 (opt-out rate of 0.1% and only three objections weighed in favor of granting final approval); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D.

683, 694 (S.D. Fla. 2014) ("[L]ow resistance to the settlement [through opt-outs and objections] … weighs in favor of approving the settlement."); *Wyatt By and Through Rawlins v. Horsley*, 793 F. Supp. 1053, 1056 (M.D. Ala. 1991) ("[A] court may properly interpret the absence of objections from a majority of the plaintiff class as indicating support for the proposed modification or settlement").

The three objections to the settlement do not undermine the conclusion that the settlement is fair, adequate, and reasonable.  Mr. Terry G. Kennedy (Doc. 68) and Ms. Goldie Brown Mitchell (Doc. 69) both generally contend that the settlement consideration is insufficient.  But neither provides an explanation of why, and the Court has determined that the relief, monetary and injunctive, provided in the settlement is fair, adequate, and reasonable, particularly given the risks that the Settlement Class would face in obtaining recovery in contested litigation.

Ms. Meriwether contends that the settlement consideration that she will receive is insufficient to justify the release of her potential Maryland state law claims.  (Doc. 69 at 17–19).  But if Ms. Meriwether believed that, she had the option to opt out.  The Court has examined Ms. Meriwether's theory of recovery under Maryland law and does not believe it has merit, but Ms. Meriwether could test her theory by opting out of the settlement.

Ms. Meriwether also argues that the statute of frauds prohibits the settlement from effectuating an amendment to the Settlement Class Members' underlying loan

documents to authorize loan payments via telephone, IVR, or the internet, and to allow Ocwen to charge Convenience Fees for the use of those payment methods. (Doc. 69 at 5–6).  Ms. Meriwether does not have standing to assert this objection because her loan is not one that would be amended by the settlement, given that servicing rights to Ms. Meriwether's loan transferred from Ocwen to Fay Servicing, LLC on August 1, 2016.  (Freezer Decl., ¶ 4; Doc. 69 at 6).  And the statute of frauds does not limit the power of the Court to enter injunctions and orders that amend loan documents by operation of law.  Indeed, Ms. Meriwether cites to Maryland's statute of frauds, which expressly provides that a modification to an agreement pertaining to interests in land can be modified "by act and operation of law."  Md. Code Ann., Real Prop. § 5-103.

## V.      Incentive Fee Award

Plaintiffs and Class Counsel seek an incentive award of $15,000 for plaintiff Robert Fielder and an incentive award of $15,000 for plaintiff Harold McWhorter. The Court finds this award fair and reasonable. Plaintiffs Fielder and McWhorter played an active role in the litigation and participated in the mediation. Class Counsel indicates that the Plaintiffs helped review investigative materials and informal discovery, and the plaintiffs were instrumental in assisting with the settlement.

The Eleventh Circuit permits incentive awards. *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1196 (11th Cir. 2019) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 975-77 (9th Cir. 2003); *Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003)).  In *Muransky*, the Eleventh Circuit approved an award of $10,000 for a class representative in a case that was contested for approximately seven months. *Id.* at 1196–97.  Here, Plaintiffs played an active role in the litigation for more than three and a half years.  There have been no objections to the service award request. The Court finds service awards of $15,000 to be fair and reasonable and approves awards of $15,000 to Mr. Fielder and Mr. McWhorter.

## VI.     Attorneys' Fees and Costs

Plaintiffs and Class Counsel seek attorneys' fees of one third of the common fund.  Since that fund is nine million, seven hundred thousand dollars ($9,700,000.00), the fee sought is three million, two hundred and thirty-three thousand, three hundred and thirty-three dollars ($3,233,333.00), plus expenses of $7,977.95.  The Court finds the requested fee and expenses to be fair and reasonable.

The Eleventh Circuit has held that fee awards from a common fund settlement such as this one are made on a percentage-of-the-fund basis. *Muransky*, 922 F.3d at 1194-95 (citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)).  The Court of Appeals and numerous district courts in this circuit have held that one-third of the fund represents a reasonable attorneys' fee, especially in

contingency fee cases, such as this one. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming 33% award); *In re Walter Energy, Inc. Sec. Litig.*, No. 2:12-cv-00281-VEH, 2016 WL 7230505, at *1 (N.D. Ala. May 3, 2016) (finding fee of 33% of the settlement "to be fair and reasonable."); *Wolff v. Cash 4 Titles, Inc.*, No. 03-22778-CIV, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2016) ("One-third of the recovery is considered standard in a contingency fee agreement"); *Seghroughni v. Advantus Rest, Inc.*, No. 8:12-cv-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee . . . which is one-third of the settlement fund . . . is fair and reasonable").

The reasonableness of a requested attorneys' fee should be examined based on the results obtained in the settlement and the benefits received by the class.  The Court has noted the uncertain nature of recovery in this case, due to the inherent uncertainty of maintaining a class action, the nature of the claims in the case, and the financial condition of the Defendant.  Class Counsel has prosecuted this case on a contingent basis, never guaranteed to receive a fee, and has obtained excellent results on behalf of the class.  No objections were filed regarding the requested attorneys' fees and expenses.

This fee satisfies the factors listed in *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Johnson* listed twelve factors for determining the reasonableness of a fee award: (1) the time and labor required; (2) the novelty and

difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Not all of these factors are relevant in every case. *Dunkle*, 946 F.2d at 772. In this case, Class Counsel are experienced attorneys who have invested time in this case to the exclusion of other employment. Class Counsel have achieved benefit for the class despite Ocwen's thorough defense. Finally, counsel's request of a one-third fee is common and appropriate in consumer class actions such as this one. *Wolff*, 2012 WL 5290155, at *4 ("One-third of the recovery is considered standard in a contingency fee agreement."); *Muransky*, 922 F.3d at 1195 (affirming approval of 33 and 1/3% fee); *Atkinson v. Walmart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund).

For the foregoing reasons, the Court finds Class Counsel's request for attorneys' fees totaling one-third of the fund and expenses of $7,977.95 to be fair and reasonable.

VII.      **The Court Denies the Objector's Motion to Intervene**

Finally, the Court denies Ms. Meriwether's alternative request to intervene in this action on behalf of a subclass of Maryland consumers.  To intervene as a matter of right, a movant must show "'(1) the application to intervene is timely; (2) the party has an interest relating to the property or transaction which is subject to the action; (3) the party is situated so that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) the party's interest is represented inadequately by the existing parties to the suit.'"  *Saccoccio v. JP Morgan Chase Bank, N.A.*, No. 13-21107-CIV, 2013 WL 5585230, at *1 (S.D. Fla. Oct. 9, 2013) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc*., 272 Fed. Appx. 817, 819 (11th Cir. 2008)).  Permissive intervention may be appropriate where "'a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.'"  *Id.* at *1 (quoting *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc*., 425 F.3d 1308, 1312 (11th Cir. 2005)).  Neither basis for intervention applies here.

Intervention by right is not appropriate because Ms. Meriwether's rights are protected by her ability to "either 'opt[] out of the class and litigat[e] separately' or [] stay[] in the case and object[] to the settlement."  *See Carr v. Ocwen Loan Servicing, LLC*, No. 1:13-cv-732, 2013 WL 12383150, at *2 (N.D. Ga. Nov. 26,

2013) (quoting *Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536 (11th Cir. 1996)).

Ms. Meriwether also has not established a basis for permissive intervention. Ms. Meriwether's only basis for seeking leave to intervene is to ensure "that correct and true notice of the[] rights" of the Maryland subclass "may be sent to them." (Doc. 69 at 7). But as the Court already explained, the Class Notice adequately disclosed to all Class Members their rights and their options, and the notice fully complies with the Federal Rules of Civil Procedure, Due Process, and all applicable requirements of law. Thus, Ms. Meriwether's critique of the notice is mistaken; there is no reason to provide additional notice to the Settlement Class or to allow Ms. Meriwether to intervene.

Moreover, Ms. Meriwether's attempt to intervene on behalf of the Maryland "subclass" is particularly flawed, because she has no standing to intervene on behalf of other Settlement Class Members. On the contrary, the Preliminary Approval Order indicates that Settlement Class Members may object or opt out only on their own behalf, not on behalf of other Settlement Class Members. (Doc. 59, ¶ 16 ("A request for exclusion may not request the exclusion of more than one member of the settlement class."); *id.* ¶ 19(b) (each objection must include "the personal signature of the objecting settlement class member")).

**VIII.      Conclusion**

Upon consideration of the Motions, the arguments raised at the Fairness Hearing, as well as all matters of record, the Court finds that there is good cause to finally approve the proposed settlement.  Per Rule 23(e), the Court concludes that the settlement, including the attorneys' fee award and incentive award, is fair, reasonable, and adequate.  Thus, the Court determines that it is appropriate to grant the Motions.  Accordingly, it is

**ORDERED**:

1.      Plaintiffs' Motion for Final Settlement Approval (Doc. 65) and Defendant Ocwen Loan Servicing, LLC's Motion for Final Approval of Class Action Settlement (Doc. 66) are **GRANTED**.

2.      **Jurisdiction.** Because due, adequate, and the best practical notice has been given and all potential settlement class members have been given the opportunity to exclude themselves from or object to the settlement, the Court finds and concludes that it has personal jurisdiction over all settlement class members and that venue is proper.[17] The Court also finds and concludes that it has subject matter jurisdiction over this action, including, without limitation, jurisdiction to approve and enforce the Settlement, grant final certification to the Settlement Class, and dismiss the Action on the merits and with prejudice, all while retaining jurisdiction

---

[17] *See, e.g., Shutts*, 472 U.S. at 811–12.

to enforce the Settlement as provided below.

       3.     **Adequacy of Representation.** The Court finds and concludes that Plaintiff and Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

       4.     **Final Class Certification.** The Settlement Class preliminarily certified by the Court on February 6, 2019 is hereby finally certified for settlement purposes, as it fully satisfies all the applicable requirements of Rule 23 and due process. The Settlement Class is comprised of:

> All borrowers on home mortgage loans that were not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, who, during the period from December 5, 2013 through and including June 1, 2018, paid a Convenience Fee to Ocwen for making a loan payment by telephone, IVR, or the internet.

> Excluded from the Settlement Class are: (a) Ocwen's board members and executive level officers; (b) persons who timely and properly excluded themselves from the Settlement Class as provided in the Amended Stipulation; and (iii) the federal district and magistrate judges assigned to this Action, along with their spouses and persons within the third degree of relationship to them.

As set forth in the declaration (Doc. 66-4) of Dorothy Sue Merryman, senior project manager of Class-Settlement.com, the Settlement Administrator, there were requests for exclusion covering 47 Class Loans and 61 members of the Settlement Class that were submitted to the Settlement Administrator on or before the June 12,

2019 mandatory exclusion deadline and that complied with the requirements of Section 6 of the Settlement. (Doc. 66-4, ¶ 21). Those 47 timely and validly submitted requests for exclusion are reflected in Exhibit C to Ms. Merryman's declaration. (*Id*., Ex. C). The Court approves each of the 47 timely and validly submitted requests for exclusion that are reflected in Exhibit C to Ms. Merryman's declaration, and thereby excludes from the Settlement Class each of the 47 Class Loans and 61 potential Settlement Class Members covered by those exclusion requests.

The Court also approves the request for exclusion that was submitted by Winston Bowen-Hay on behalf of the Estate of Gloria Augusta Hay because subsequent to the fairness hearing, Mr. Bowen-Hay provided sufficient information to counsel for the parties indicating his authority to act on behalf of the estate and the relevant mortgaged property with respect to this Settlement.

As for the Flores and Lopez opt outs, to ensure that appropriate effect be given to those opt outs, if and to the extent they are, in fact, validly submitted on behalf of actual members of the Settlement Class, the Court **ORDERS**:

      (a)    Within one (1) business day, the parties shall cause the Settlement Administrator to send by U.S. mail and, to the extent available, email, a letter to Ms. Flores and Ms. Lopez at the mailing and email addresses listed on their respective requests for exclusion. The letters:

- For Ms. Tanya Flores shall request that she provide her loan number and that she confirm whether or not she is or has been associated with the address identified on the class roster for "Tanya Flores";

- For Ms. Betty Lopez shall request that she confirm whether or not she is or has been associated with the address identified on the class roster for "Betty Ann Lopez"; and if so, that she provide her loan number relevant to her opt out.

Each letter shall indicate that the requested information must be provided within fourteen (14) days of when the letter was sent, and that otherwise, the request for exclusion shall be declared invalid. The Settlement Administrator shall attempt to contact Ms. Flores and Ms. Lopez by telephone to request the same information.

(b) If additional information is received, the Settlement Administration shall determine whether Ms. Flores and Ms. Lopez are members of the Settlement Class. If the Settlement Administrator is satisfied that either of these persons has established membership on the class roster in this fashion, she must deem the opt out valid. Otherwise, she must deem the opt out invalid.

(c) No later than 3 business days following expiration of the 14-day deadline, the Settlement Administrator shall file with the Court and mail to Ms. Flores and Ms. Lopez a supplemental declaration describing any additional information that is received; the Settlement Administrator's determination of whether or not Ms. Flores and Ms. Lopez were members of

the Settlement Class; and if so as to one or both, the last four digits of the class loan that is thus deemed to have been validly opted out. The Settlement Administrator's determination in accordance with this Order will be final and binding on all concerned, but the Court shall retain continuing jurisdiction over the same as set forth below in Paragraph 10.

5.    **Class Notice.**  The Court finds and concludes that the parties and Settlement Administrator fully discharged the duties imposed on them by the Court's February 6, 2019 Preliminary Approval Order with respect providing notice to the Settlement Class.  The form, content, and method of dissemination of the Class Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Class Notice provided sufficient notice to the Settlement Class of the proposed settlement, the terms and conditions set forth in the Amended Stipulation, including the scope of the release, and these proceedings, and fully satisfied the requirements of Rule 23 and due process.

6.    **Final Settlement Approval**

(a)    The Court finds and concludes that the terms and provisions of the proposed Settlement, including all of its exhibits, have been negotiated and entered into by the parties in good faith and at arm's length.  The settlement is both substantively and procedurally fair, and is fully and finally

approved as fair, reasonable, and adequate as to each of the parties and each of the Settlement Class Members and as being in the best interests of the Settlement Class Members.  The Court finds and concludes that the settlement fully complies with all applicable requirements of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).  In sum, the settlement, is fully and finally **APPROVED** in all respects and is hereby made effective.

(b)     The parties are directed to implement and consummate the Settlement according to its terms and provisions.  The parties are also directed to take all steps necessary and appropriate to provide the Settlement Class Members with the benefits to which they are entitled under the Settlement.

(c)     When all checks have been paid to the eligible Settlement Class Members and time for cashing those checks has expired, any funds remaining shall be payable as a cy pres award to:

> Homes for Our Troops
> 6 Main St
> Taunton, MA 02780

7.     **Binding Effect.** The terms of the Settlement and of this Final Order and Judgment shall be forever binding on the Plaintiffs, Ocwen, and all Settlement Class Members who did not timely and validly exclude themselves from the Settlement Class as reflected in Paragraph 4 above, as  well  as  their  present,  former  and

future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors.  The terms of the Settlement and of this Final Order and Judgment shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons or entities, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Settlement's Release.

8.      **Release.** The Court approves, incorporates and adopts the release set forth in Section 8 of the settlement.  The Release is made effective as of the Final Settlement Date, and will forever discharge Ocwen and the Released Parties of and from any liability to the Plaintiffs and the Settlement Class Members who did not timely and validly exclude themselves from the Settlement Class as reflected in Paragraph 4 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, arising in whole or in part from the Released Claims as defined in the settlement.  The Release does not discharge Ocwen and the Released Parties of and from any liability arising in whole or in part to individuals who timely and validly excluded themselves from the Settlement Class, as reflected in Paragraph 4 above.

9.      **Permanent Injunction.** Plaintiffs and all of the Settlement Class

Members who did not timely and validly exclude themselves from the Settlement Class as reflected in Paragraph 4 above, as well as their present, former and future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, and/or successors, are permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating as a party or class member in, or otherwise pursuing or receiving any benefits from any lawsuit (including putative class actions), arbitrations, administrative, regulatory, or other proceedings or orders in any jurisdiction that is based on or related to, directly or indirectly, in whole or in part, the Released Claims. The Court finds that issuance of this permanent injunction is necessary and appropriate to effectuate its judgment and in aid of its retaining and continuing jurisdiction and authority over the Action and settlement.

10. **Retention of Jurisdiction.** The Court expressly finds that there is no just reason for delay and the Clerk of Court is directed to enter this Final Order and Judgment as a final judgment. Without in any way affecting the finality of this Final Order and Judgment, the Court expressly retains exclusive and continuing jurisdiction: (a) as to the administration, consummation, enforcement, and interpretation of the settlement, including the Release, and the Final Order and Judgment; (b) resolution of any disputes concerning settlement class membership or entitlement to benefits under the terms of the settlement; and (c) all parties hereto,

including members of the Settlement Class, for purposes of enforcing and administering the settlement and this Action generally, until each and every act agreed to be performed by the parties has been performed in accordance with the settlement.

11.   **No Admissions.** Neither this Final Order and Judgment, nor the settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against Ocwen or the Released Parties of the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability. Ocwen continues to deny that the action meets the requisites for class certification under Rule 23 for any purpose other than settlement.  Entering into or carrying out the settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to Ocwen's denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the settlement and this Final Order and Judgment; provided, however, that the settlement and Final Order and Judgment may be filed in any action brought against or by Ocwen or the Released Parties to support a defense of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue

preclusion, or similar defense or counterclaim.

12. **Termination of Settlement.** This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the parties and Settlement Class Members, all of whom shall be restored to their respective positions existing immediately before the Court entered its February 6, 2019 Preliminary Approval Order, if: (a) the settlement does not reach the Final Settlement Date as defined in Section 2 of the Amended Stipulation; (b) the settlement is terminated by a Party in accordance with its provisions; or (c) the settlement does not become effective for any other reason.

13. **Attorneys' Fees and Incentive Award.** The Court hereby awards reasonable attorneys' fees of $3,233,333.00 plus expenses of $7,977.95 to Class Counsel and incentive awards of $15,000.00 to Plaintiff Robert Fielder and $15,000.00 to Plaintiff Harold McWhorter.

14. **Dismissal of Action.** Subject to the provisions of this Final Order and Judgment, including the Court's retention of jurisdiction as set forth herein, this action (including all individual and class claims presented herein) is dismissed on the merits and with prejudice, and without any other past or future fees, expenses, or

costs to any party or Settlement Class Member.  The Clerk of the Court is **directed**

to terminate any pending motion as moot and close the file.

**DONE** and **ORDERED** this August 1, 2019.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE